176 N.J. Super. 484 (1980)
423 A.2d 1002
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MARVIN KAYE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 23, 1980.
Decided November 21, 1980.
*486 Before Judges MICHELS, ARD and FURMAN.
Robert E. Zwengler argued the cause for appellant (Hersh Kozlov, attorney).
Patrick C. Byrne, Deputy Attorney General, argued the cause for respondent (John J. Degnan, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Defendant Marvin Kaye appeals from his conviction entered on a plea of guilty to causing death by automobile in violation of N.J.S.A. 2A:113-9. On appeal, defendant solely challenges the trial judge's denial of his pretrial motion to exclude the results of a blood-alcohol test on the ground that the State allegedly failed to comply with the provisions of R. 3:13-3(a)(4) by not preserving a portion of the blood sample for discovery purposes. Essentially, he claims that the failure of the State to furnish the blood sample violated his right to due process of law.
On January 8, 1977, at about 2:31 a.m., defendant was operating his automobile in the southbound lane of Route No. 168 in Runnemede, New Jersey. When defendant's automobile was at or near the entrance to the New Jersey Turnpike, it crossed the centerline and entered the northbound lane. Defendant's vehicle then collided head-on with an automobile driven by John J. Welsh IV. Welsh was taken to J.F.K. Hospital where he was pronounced dead. Defendant was taken to the West Jersey Hospital.
Patrolman Scott of the Runnemede Police went to the West Jersey Hospital to interview defendant. Patrolman Scott detected a strong odor of alcohol on defendant's breath and requested that a blood sample be taken for purposes of determining the alcoholic content of defendant's blood. Patrolman Scott also advised defendant of his right to have a second blood sample drawn at his own expense for his independent testing. *487 Defendant refused to exercise his right to have a second sample taken but signed the hospital request form in which he consented to the taking of the sample Patrolman Scott had requested. The blood was drawn under the supervision of a hospital physician, and the blood sample was sent to the New Jersey State Police Laboratory at Hammonton, New Jersey, for analysis. The analysis revealed that the alcoholic content of defendant's blood was.145%. Under N.J.S.A. 39:4-50.1(3), a defendant is presumed to be under the influence of intoxicating liquor if the weight of alcohol in his blood is .10% or more. According to established procedure, the blood sample was also tested for drugs. This test proved to be negative. The two testings consumed the entire blood sample.
Defendant was arrested and charged with careless driving and driving while under the influence of alcohol. Subsequently, he was indicted by the Camden County grand jury and charged with causing the death of Welsh by driving an automobile carelessly and heedlessly, in willful and wanton disregard of the right or safety of others, in violation of the provisions of N.J.S.A. 2A:113-9. Defendant entered a plea of not guilty and requested in pretrial discovery that the prosecutor furnish him with authorization to procure for independent laboratory testing the blood sample drawn from him. The prosecutor furnished defendant with a copy of the blood-alcohol test, but was unable to furnish defendant with the blood sample because it had been consumed during the testing by the State Police Laboratory. Defendant thereupon moved for an order "excluding all evidence relating to a blood sample drawn" from him on the ground that "the State had failed to furnish discovery of the sample despite defendant's timely written request therefor pursuant to R. 3:13-3." At the conclusion of the hearing Judge Bigley in the Law Division denied the motion and held that the results of the blood-alcohol test were admissible in evidence. The judge found that since defendant had been advised of his right to have a sample of his blood taken and chemically tested by a physician of his own choice, as required by N.J.S.A. *488 39:4-50.2(c), and had been furnished with a copy of the record of the taking of the sample, disclosing the date and time thereof as well as the result thereof, as required by N.J.S.A. 39:4-50.2(b), defendant's due process guarantees were more than adequately protected.
Defendant then entered a retraxit plea of guilty to causing death by automobile and was sentenced to State Prison for one to three years. His motion for reconsideration of the sentence was denied, and this appeal followed.

I
Preliminarily, the State argues that defendant's plea of guilty to the indictment constitutes a waiver of all nonjurisdictional objections to the State's pre-plea conduct, and therefore this challenge to his conviction is not cognizable on appeal. We agree.
It is fundamental that a guilty plea precludes a defendant from raising any nonjurisdictional claims as to deprivation of his constitutional rights before the entry of the plea. The rule was clearly stated in Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235, 243 (1973), as follows:
... We thus reaffirm the principle recognized in the Brady trilogy: a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.
The waiver effect of a guilty plea has been uniformly recognized by our courts. See, e.g., State v. Garoniak, 164 N.J. Super. 344, 349 (App.Div. 1978), certif. den. 79 N.J. 481 (1979); State v. Rosenberg, 160 N.J. Super. 78, 80 (App.Div. 1978), certif. den. 78 N.J. 332 (1978); State v. Ternaku, 156 N.J. Super. 30, 35 (App. Div. 1978), certif. den. 77 N.J. 479 (1978). See also State v. Taylor, 140 N.J. Super. 242, 244-245 (App.Div. 1976); State v. *489 Raymond, 113 N.J. Super. 222, 226-227 (App.Div. 1971), and State v. Humphreys, 89 N.J. Super. 322, 326 (App.Div. 1965), which were decided before the adoption of R. 3:5-7(d).
Since defendant knowingly and intentionally pleaded guilty in open court with the assistance of counsel, we are satisfied that he waived his right to challenge his conviction on the ground asserted here.
Contrary to defendant's claim, R. 3:5-7(d) does not apply to preserve his right to appeal from the conviction following his guilty plea. The rule which amended R. 3:5-7, dealing specifically with motions to suppress evidence based on a claim of an unlawful search and seizure, and engrafted a limited exception to the guilty plea-waiver rule in New Jersey was adopted by our Supreme Court on January 28, 1977. The rule provides:
(d) Appellate Review. Denial of a motion made pursuant to this rule may be reviewed on appeal from a judgment of conviction notwithstanding that such judgment is entered following a plea of guilty.
Paragraph (d) was added to the 1977 revision of R. 3:5-7 to permit the preservation of an appellate challenge to denial of a suppression motion despite the entry of a plea of guilty. Pressler, Current N.J. Court Rules, Comment R. 3:5-7(d) (1981). The right of appeal under this rule is limited to motions made pursuant to R. 3:5-7(a) challenging a search and seizure as unlawful. The rule does not expressly or by fair implication permit appellate review of pretrial motions in general, such as those relating to the admissibility of evidence. Here, defendant challenged the admissibility of the results of a blood-alcohol test solely on grounds that the State failed to furnish him with a blood sample, as required by R. 3:13-3(a)(4), and therefore violated his due process rights. He did not challenge the taking of the blood sample as an unlawful search and seizure.
Accordingly, we hold that defendant waived his right to challenge his conviction on due process grounds by virtue of his plea of guilty.
*490 We simply point out that in the future the proper procedure for a defendant to follow to challenge the admissibility of evidence prior to his trial on grounds other than an unlawful search and seizure (R. 3:5-7(a)), is set forth in R. 3:13-1(b), adopted on July 16, 1979. This rule provides:
(b) Pretrial Hearings. Hearings to resolve issues relating to the admissibility of statements by defendant, pretrial identifications of defendant and sound recordings may be held immediately prior to jury selection and, upon a showing of good cause, hearings as to admissibility of other evidence may also be held. (Emphasis added).
Now, under our rules, if at the conclusion of such a pretrial hearing pursuant to R. 3:13-1(b), the court determines that the challenged evidence is admissible, a defendant may, with the approval of the court and the consent of the prosecutor, enter a conditional plea of guilty reserving on the record the right to appeal from the adverse determination of such pretrial motion. If the defendant prevails on the appeal, he is afforded the opportunity to withdraw his plea. R. 3:9-3(f), adopted July 21, 1980 to be effective September 8, 1980. See Pressler, Current N.J. Court Rules, Comment R. 3:9-3(f) (1981).

II
Beyond this, even if defendant had not waived his right to challenge his conviction on appeal by pleading guilty to the indictment, we are convinced that the consumption of the blood sample during the testing procedure by the State Police Laboratory did not deny him due process within the principles discussed in United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), and Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We hold to the view that where an entire sample of a specimen, such as blood, is, as here, in good faith, consumed or destroyed during the testing process by a recognized law enforcement or other qualified laboratory, the consumption or destruction of the specimen does not constitute an act of suppression of evidence by the State sufficient to trigger a due process violation, warranting the suppression of the test results. Thus, in State v. Teare, 135 N.J. Super. 19 (App.Div. *491 1975), we held that the destruction pursuant to State Police practices of a test ampoule utilized in a breathalyzer test did not require the suppression of the test results, stating: "the State's failure to produce the ampoule does not deny defendant due process of law." Id. at 22. See also State v. Washington, 165 N.J. Super. 149, 155-158 (App.Div. 1979). Courts in other jurisdictions have reached similar results. For example, in United States v. Sewar, 468 F.2d 236 (9 Cir.1972), cert. den. 410 U.S. 916, 93 S.Ct. 972, 35 L.Ed.2d 278 (1973), the Ninth Circuit refused to suppress a laboratory report concerning the alcohol content of a defendant's blood where, after completion of the test, a technician innocently destroyed the remaining sample. The Sewar court followed United States v. Augenblick, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969). There, the United States Supreme Court, dealing with the loss of a critical tape recording, held that where the government acted in good faith and exercised "earnest efforts" to preserve evidence, defendant's conviction had to be upheld.
Similarly, in United States v. Love, 482 F.2d 213 (5 Cir.1973), cert. den. 414 U.S. 1026, 94 S.Ct. 453, 38 L.Ed.2d 318 (1973), the Fifth Circuit also refused to suppress the results of scientific testing in which the sample had been completely consumed in the testing process and hence, was unavailable to defendants' expert. In that case, the government caught defendants after they had thrown a firebomb onto the roof of a building. Defendants' hands were swabbed with an acetone solution for test purposes. While the government supplied defendants with all of the evidence it had in its possession, it could not supply the sample acetone swab due to its consumption during the testing. See also Edwards v. Oklahoma, 429 F. Supp. 668, 670-671 (W.D. Okl. 1976); State v. Atkins, 369 So.2d 389, 390 (Fla.D.Ct.App. 1979); State v. Herrera, 365 So.2d 399, 401 (Fla.D.Ct.App. 1978), cert. den. 373 So.2d 459 (Fla.Sup.Ct. 1979); Poole v. State, 291 So.2d 723, 725-726 (Miss.Sup.Ct. 1974), cert. den. 419 U.S. 1019, *492 95 S.Ct. 492, 42 L.Ed.2d 292 (1974); State v. Jones, 18 Or. App. 343, 345-346, 525 P.2d 194, 195-196 (Or. App. 1974); State v. Lightle, 210 Kan. 415, 416, 502 P.2d 834, 836 (Sup.Ct. 1972), cert. den. 410 U.S. 941, 93 S.Ct. 1406, 35 L.Ed.2d 607 (1973).
Furthermore, the statute pursuant to which the blood sample was taken adequately protected defendant's constitutional rights to due process. N.J.S.A. 39:4-50.2 (amended by L. 1977, C. 29, § 3), in pertinent part, provides:
(a) Any person who operates a motor vehicle on any public road, street or highway or quasi-public area in this State shall be deemed to have given his consent to the taking of samples of his breath for the purpose of making chemical tests to determine the content of alcohol in his blood; provided, however, that the taking of samples is made in accordance with the provisions of this act and at the request of a police officer who has reasonable grounds to believe that such person has been operating a motor vehicle in violation of the provisions of R.S. 39:4-50.
(b) A record of the taking of any such sample, disclosing the date and time thereof, as well as the result of any chemical test, shall be made and a copy thereof, upon his request, shall be furnished or made available to the person so tested.
(c) In addition to the samples taken and tests made at the direction of a police officer hereunder, the person tested shall be permitted to have such samples taken and chemical tests of his breath, urine or blood made by a person or physician of his own selection.
(d) The police officer shall inform the person tested of his rights under subsections (b) and (c) of this section.
The State complied with the requirements of N.J.S.A. 39:4-50.2. Patrolman Scott specifically advised defendant before he signed the hospitalization request, consent and release form that he could have a blood sample taken and tested by a physician of his own choice. Defendant did not avail himself of this opportunity and certainly he cannot complain now that he was deprived of due process by reason of the fact that the sample taken by the State was consumed. Accordingly, we have no hesitancy in concluding that the trial judge properly ruled that the results of the blood-alcohol test were admissible in evidence.
Affirmed.