184 N.J. Super. 304 (1981)
445 A.2d 1186
STATE OF NEW JERSEY, PLAINTIFF,
v.
MICHAEL HUNT, DEFENDANT.
Superior Court of New Jersey, Law Division (Criminal), Salem County.
Decided October 6, 1981.
*305 Edgar Hathaway, Jr., Assistant Salem County Prosecutor, for plaintiff.
Alan Silber, for defendant.
TELSEY, J.S.C.
This is a motion for the dismissal of an indictment because of prosecutorial misconduct.
The defendant contends that the prosecutor's office has engaged in a pattern of misconduct sufficiently egregious to warrant the dismissal of the indictment against him. The misconduct charged against the prosecutor deals with the failure *306 to provide discovery, the destruction of evidence and attempts to limit the exculpatory evidence available to the defendant.
The State maintains that dismissal of the indictment is too severe a sanction for any misconduct which may have occurred. Initially, they claim that the destruction of the evidence was accidental and could be replaced by other means and therefore the dismissal would be improper. In addition they argue the discovery sought and the evidence destroyed were not material to the defense and therefore the dismissal would be improper.
Neither party sets out the facts with any particularity, but the points in contention are not in dispute. The argument revolves around the destruction of certain evidence and the failure to disclose other evidence. It is within the trial judge's discretion to dismiss an indictment for failure to comply with the rules of discovery. State v. Laganella, 144 N.J. Super. 268 (App.Div. 1976). An investigation of each area of dispute reveals a pattern of misconduct sufficient to warrant dismissal of the indictment against defendant.

I. Destruction of the January 6, 1978 Tape

It has been held that the duty of disclosure attaches in some form once the government has first gathered and taken possession of the evidence. United States v. Bryant, 439 F.2d 642 (D.C. Cir.1971). The court there held that "before a request for discovery has been made, the duty of disclosure is operative as a duty of preservation." At 651. The court felt that this was the only way to insure that disclosure would be possible at a later time.
The facts are undisputed that on January 6, 1978 a conversation was held on the telephone between defendant Hunt and Special Agent Maloney which was recorded by Agent Maloney. Under the rule of Bryant it would appear that the State was under a duty to preserve the tape as evidence once it came into its possession. However, the State attacks this conclusion on several fronts.
*307 Initially, the State argues that the courts do not follow the ruling of Bryant and its progeny. It suggests that the New Jersey courts follow a "more realistic approach" in determining the State's duty to preserve evidence. The State directs the court to several authorities, but they do not conflict with the Bryant decision. In State v. Kaye, 176 N.J. Super. 484 (App.Div. 1980), the court held that the consumption of an entire blood sample during testing did not deny a defendant his due process rights. The decision there was based on the Supreme Court's decision in United States v. Augenblick, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969). There the court decided that the government had acted in good faith and had made an earnest effort to preserve the evidence.
The State in the present action attempts to cast their action in the same light as those in Augenblick. They argue that by destroying the tape after he had listened to it and determined it was of no value, that Agent Maloney acted in good faith. However, it is not the prerogative of the State to determine what is or is not valuable evidence. They may not select exhibits for and on behalf of defendant. Alderman v. U.S., 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). In light of the above rule it is difficult to find that agent Maloney acted in good faith when he destroyed the tape.
For further support of their contention the State points to State v. Teare, 135 N.J. Super. 19 (App.Div. 1975). There the Appellate Division held that the destruction of breathalyzer ampoules after their use did not violate defendant's due process right to disclosure of evidence. However, this case does not conflict with the Bryant decision. The key to the Teare decision was the fact that the ampoules after their use could provide no useful evidence at trial. The same cannot be said for the destroyed tape. The exact contents of the recording is not known. It does appear, however, from the briefs that it did contain evidence which would support the defendant's contention that he had withdrawn from the conspiracy. Since this is a *308 valuable defense it cannot be said that the tapes contained no useful evidence.
This leads us into the second attack by the State on the defendant's claims. An indictment should not be dismissed unless the failure to disclose information is material to the defense. State v. Lewis, 137 N.J. Super. 167 (Law Div. 1975). The State's claim that the defendant has refused to allege that the information sought was material is refuted by the fact that the tape may have contained information pertinent to the defense of withdrawal. Transcripts of the February 17, 1981 hearing reveal that as of January 6, 1978 there was some question as to whom the source of the drugs would be.
The next contention by the State is that the tape was not made for evidentiary value. They claim the tape was made only to provide Agent Maloney with direction to the agreed meeting points and, therefore, they did not have a duty to preserve the tape. On remand, the D.C. Circuit addressed this issue in United States v. Bryant, 448 F.2d 1182 (1971). There they held that the duty to preserve is not excused because the purpose of the tape was other than evidentiary. There the state claimed that the purpose of the tape was to protect the agents involved in an undercover assignment. The court held that failure of narcotics bureau to obey a rule concerning preservation of the tape recordings could not be excused by his stated purpose of recording conversation in order to protect the undercover agent rather than to collect evidence, nor the fact the tape was intelligible. Id. at 1184, n. 1.
The Drug Enforcement Agency (DEA), for whom Agent Maloney worked, has promulgated procedures for the preservation of evidence. Under § 76-1 of the DEA manual, passed December 5, 1975, the agents are to retain tapes of nonconsensual recordings, whether audible or not, for a period of ten years. Here the State claims that the tape was destroyed after a determination that it was of no value. This is in direct disobedience of their own procedures. Under the rule of Bryant II this amounts to misconduct.
*309 Finally, the State argues that any evidence destroyed with the tape is obtainable through other means. They argue that since defendant Hagen is available to testify, the indictment should not be dismissed. This must fail for several reasons. Initially, the duty to preserve evidence is not premised upon it being unavailable from other means. Secondly, just because defendant Hagen may be available to testify does not mean that he will recall the exact events that transpired on January 6, 1978, a day that has passed now by 3 1/2 years. When Agent Maloney was questioned by defendant's counsel at the trial of February 17, 1981 he could not recall the gist of a conversation held between himself and defendant on January 4, 1978. Why should it be assumed that defendant Hagen's recollection of the January 6th conversation will be any better?
The State had the duty and opportunity to protect the destroyed evidence. Not only did they fail to protect the actual tape, they did not make a routine report of the incident so that the information might be available by other means. It is this type of action that the rule of preservation and disclosure seeks to eliminate to protect the integrity of the criminal justice system.

II. The Plea Bargains

During the proceeding the State entered into plea bargains with various defendants in the case. Defendant Hunt complains about these on several grounds. The most serious and important of these complaints pertain to the bargain struck with defendant Hagen. That arrangement contains as an integral part that defendant Hagen "not give exculpatory testimony in favor of Hunt at his trial. If your client violates this condition, then I reserve the right to retract the plea bargain arrangement and reinstate the proceeding against him."
This type of provision in a plea bargain is against public policy in that it has the effect of denying defendant Hunt a witness at his trial. The State argues that since at the present time defendant Hagen has been charged and sentenced, he is *310 available to testify. Whether any misconduct has occurred does not depend upon the success of the actions. The mere attempt at measures such as these which so strongly contravene public policy is sufficient to find misconduct. This time the attempt was unsuccessful, however, if the attempt goes unpunished what is to prevent further attempt?

III. Failure to Provide the Name of the Informant

By order of November 30, 1978 the State was ordered to reveal the identity of their informant because he was crucial to defendant Hunt's defense of withdrawal. As of the hearing of February 17, 1981 the information had not been provided. Despite the State's contentions that such information had been revealed at earlier proceedings, it became clear that such was not the case. At the above hearing the name was revealed but not the address or phone number. In a later letter the State claimed to no longer possess the requested information.
The State answers contentions of misconduct by charging defendant failed to follow up on the court's order to provide information. An order of the court is to be followed diligently by the affected party. It is not the duty of the other party to badger compliance. The result of the noncompliance is that a valuable witness is lost to defendant and the court. This again is the type of behavior that must be prohibited.
For all the above reasons the court finds that the State engaged in prosecutorial misconduct sufficient to compel dismissal of the indictment, and it is so ordered.