182 N.J. Super. 502 (1981)
442 A.2d 1012
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
GUALBERTO MORALES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 24, 1981.
Decided December 14, 1981.
*503 Before Judges MATTHEWS, PRESSLER and PETRELLA.
*504 Stanley C. Van Ness, Public Defender, for appellant (William Welaj, designated counsel, of counsel and on the brief).
James R. Zazzali, Attorney General of New Jersey, for respondent (Carol M. Henderson, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by PETRELLA, J.A.D.
Following a plea agreement defendant Gualberto Morales entered retraxit pleas of guilty on March 6, 1980 to charges of murder (N.J.S.A. 2C:11-3)[1] and aggravated sexual assault (N.J.S.A. 2C:14-2a(1)) on an eight-year-old boy. He now appeals the sentence and the rulings on certain pretrial motions made before the pleas and decided adversely to his contentions. As part of the plea agreement a charge of kidnapping (N.J.S.A. 2C:13-1b(1)) was dismissed, and the State reserved the right to make a recommendation as to sentence. The State also was to recommend that the sentence on the aggravated sexual assault charge be concurrent with that on the murder charge.
While the presentence investigation was being undertaken defendant made allegations to the probation officer charged with responsibility to prepare the presentence report that he did not commit the crimes and had confessed only because he was beaten by the police. Because the voluntariness of defendant's pleas was placed in issue, the trial judge held additional hearings prior to sentencing and determined that there was no merit in defendant's claim of police brutality and that his statements were voluntary. The judge refused to set aside the defendant's pleas. There is no direct request on this appeal to vacate these pleas.
*505 Defendant was sentenced on June 9, 1980 to life imprisonment on the murder charge, with a 25-year period of parole ineligibility, and to a concurrent term of 15 years for aggravated sexual assault.
Defendant appeals, raising the following issues:
1) The trial court erred in denying defense counsel's motion to "suppress" because the various statements obtained from defendant were the direct result of an unlawful detention.
a) At the time defendant was placed in custody, the police did not possess sufficient probable cause to arrest defendant.
b) The subsequent oral and written statements made by defendant to the police and to the news media were tainted by the illegal detention, mandating their exclusion from trial as being the "fruit of the poisonous tree."
2) Since the court imposed an extended term of life imprisonment without considering the relevant aggravating and mitigating circumstances, defendant is entitled to a resentencing.
The essential facts are that on October 15, 1979 the police received a report that an eight-year-old boy was missing in Paterson. The child's mother suggested that the police question defendant, who was the last person seen with her son. Defendant, then age 23, was questioned that day and he told the police officer that he had not seen the boy. However, at about 8:25 p.m. the next day defendant voluntarily went to police headquarters because he heard the police were looking for him, and he informed the police he had last seen the boy on Main Street at around 6:30 p.m. the previous evening when the child was on his way home.
On October 26 a police officer was told by a reliable informant that he had overheard defendant's brother tell another individual that his brother had killed the child. On November 1 detectives investigating the disappearance decided to again speak with defendant, and with the help of defendant's brother eventually found him working in a garage. After defendant asked that they speak at a different location, he agreed to go with them to the Detective Bureau. At the bureau he repeated the story that he gave on October 16, but added that after he saw the boy walking home he went to a supermarket on Main Street where he drank beer until about 8 p.m. with two individuals *506 named Tito and Ralphy. Although defendant did not know where these men lived, he knew the places which they frequented and told the detectives he would return the next day to help find them.
On November 2 the owner of a local tavern told the officers he had seen defendant with a small boy on October 15 in the area of Straight Street and 21st Avenue sometime after 4:30 p.m. The officers then returned to the police station where they met defendant, who agreed to accompany them in their search for Ralphy and Tito. Two detectives sat in the front seat of the police vehicle while defendant and an officer who could speak fluent Spanish, defendant's native language, sat in the back. The vehicle had four doors which were all capable of being opened from the inside. Defendant was not at this time restrained in any way. Defendant was advised in Spanish of his constitutional rights under Miranda[2] and told that someone had seen him and a young boy on October 15 in the vicinity of Straight Street and 21st Avenue.
Unable to locate Ralphy and Tito, the officers returned to Main Street and asked defendant to retrace his route home on the night of October 15. The officers noted that the route defendant claimed he used was circuitous and not the shortest way to his residence. It became clear to them that he was purposely avoiding the area of Straight Street and 21st Avenue, an industrial zone which included a freight yard. This apparently confirmed the detectives' belief that defendant was a suspect in the boy's disappearance. They then drove to the area they felt defendant was avoiding.
Upon searching the area two of the detectives discovered the body of the missing child while defendant remained in the vehicle with the third officer. They then brought defendant to the site where the body was located, at which point defendant blurted out in Spanish, "I didn't mean it, it wasn't in me. There *507 was something wrong with my mind." Defendant was trembling and crying. He was taken from the scene and again given a Miranda warning in Spanish. Defendant indicated that he understood his rights. He began to cry again, dropped to his knees and gave an oral statement in which he admitted he strangled the child after he had discussed a sexual act with the victim.
Defendant was then transported to police headquarters and given a Miranda warning in Spanish for the third time. He signed a form indicating that he understood his rights and gave the police a signed, sworn confession. Defendant was taken downstairs at headquarters to be formally booked for the crimes. There were several newspaper and television reporters present at that time. While a video camera recorded the event, a reporter from a Spanish language television station asked defendant in Spanish if he committed the crime, how he did it and why. Defendant replied that he did it with his hands and that "it was something wrong with my mind."
Defendant argues that the voluntary statements given to the police were the product of an illegal detention and that there was no probable cause for his detention. The reasoning is that Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), therefore requires a determination of inadmissibility (which defendant couches in terms of "suppression.") The State argues alternatively that there was no illegal detention of defendant and that he was not in custody until the body of the murdered child was found. There is adequate evidence in the record to support the trial judge's finding of a detention in the police vehicle and sufficient probable cause for that detention even though defendant had initially offered to assist the police and went with them freely. We have considered the substance of plaintiff's appeal with regard to his inculpatory statements and conclude it is without merit. R. 2:11-3(e)(2).
More fundamentally, we decide this appeal on the ground that defendant has waived that issue by his unconditional *508 guilty pleas. A plea of guilty to the charge without any reservation of rights with respect to the constitutional issue of the admissibility of his statements is a full and complete waiver of that constitutional issue. State v. Kaye, 176 N.J. Super. 484, 488-490 (App.Div. 1980).
Our rules contemplate that such constitutional challenges in criminal cases are to be raised and resolved prior to trial. R. 3:13-1(b) expressly authorizes pretrial hearings, as held in this case, for the determination of issues such as the admissibility of statements.
It is only where there is an express reservation either by court rule or in the plea that such objections are preserved for appeal subsequent to a guilty plea and judgment of conviction. Nor does defendant's characterization of the relief sought as a "suppression" of his statements bring it within the ambit of R. 3:5-7(d). That limited exception to the general rule of waiver arose as a result of a 1977 amendment adding subparagraph (d) which expressly permits preservation of the issue for appeal, after denial of a timely motion to suppress, based on allegations of illegal search and seizure. R. 3:5-7 is clearly limited to motions to suppress physical evidence. Id. at 489.
By an amendment effective September 8, 1980 paragraph (f) was added to R. 3:9-3 to now afford a defendant the option of entering a conditional guilty plea with the approval of the court and consent of the prosecuting attorney to preserve a right to appeal from a specified pretrial motion.[3] Because R. 3:9-3(f) excludes a motion under R. 3:5-7(d), the clear intent of R. 3:9-3(f) is that, except for a motion to suppress physical evidence, a guilty plea constitutes a waiver of all alleged constitutional *509 defects, unless it is made as a conditional plea pursuant to that Rule. The concept of a conditional guilty plea is a modification of the usual rule (the rule under which defendant, Morales, here entered his plea) that the guilty plea "is a break in the chain of events which has preceded it in the criminal process" and acts as a waiver of the constitutional issues. Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235, 243 (1973); State v. Kaye, supra 176 N.J. Super. at 488. It is of no aid to defendant that R. 3:9-3(f) was not in effect either when he entered his plea or was sentenced. The fact is that defendant entered an unconditional plea which clearly fell within the case law as to waiver.
In summary, when defendant unconditionally entered retraxit pleas of guilty on March 6, 1980 to two of the three charges against him after the denial of his pretrial motions on the admissibility of his oral and written statements he waived the constitutional issues sought to be raised on this appeal. We recognize that his pleas were prior to the September 8, 1980 effective date of R. 3:9-3(f) which now explicitly authorizes conditional pleas. Nevertheless, such a guilty plea by defendant at that time, without any reservation of rights, constituted a bar as to those issues.
As to defendant's claim that the extended term of life imprisonment was imposed without considering relevant aggravating and mitigating circumstances, we have considered the record, the nature of the offenses, the arguments in the briefs and the reasons given by the sentencing judge. We conclude that the sentence was not only within the plea agreement but within the discretion of the sentencing judge. There are no compelling circumstances warranting our intervention. State v. Spinks, 66 N.J. 568, 574 (1975) and State v. Whitaker, 79 N.J. 503, 511-512 (1979).
Affirmed.
NOTES
[1] This section of the Penal Code has since been amended by L. 1981, c. 290, effective September 24, 1981. The amendment, however, does not affect the issues on appeal.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] See, Report of the Supreme Court's Committee on Criminal Practice, 105 N.J.L.J. 425, 426 (May 8, 1980) and Judicial Conference Report  Report of Task Force on Post Indictment Delay, 105 N.J.L.J. 521, 534-535 (June 5, 1980).