**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1892-14T2
            A-1909-14T3

STATE OF NEW JERSEY,

        Plaintiff-Respondent,

v.

SHARON BOWEN,

        Defendant-Appellant.

_____


STATE OF NEW JERSEY,

        Plaintiff-Respondent,

v.

JAMES GADSON, a/k/a JAMES P.
GADSON, JR., JAMES BENNETT,

        Defendant-Appellant.

_____

            Submitted May 15, 2017 — Decided August 29, 2017

            Before Judges Nugent and Haas.

            On appeal from Superior Court of New Jersey,
            Law Division, Ocean County, Indictment No. 09-
            05-0914.

Joseph E. Krakora, Public Defender, attorney for appellant in A-1892-14 (Alison Perrone, Designated Counsel, on the brief).

Joseph E. Krakora, Public Defender, attorney for appellant in A-1909-14 (John A. Albright, Designated Counsel, on the brief).

Joseph D. Coronato, Ocean County Prosecutor, attorney for respondent in A-1892-14 and A-1909-14 (Samuel Marzarella, Chief Assistant Prosecutor, of counsel; William Kyle Meighan, Senior Assistant Prosecutor, on the brief).

PER CURIAM

Charged with controlled dangerous substance (CDS) offenses, defendants Sharon Bowen and James P. Gadson, Jr. filed motions to suppress the wiretap evidence on which the charges were largely based. The trial court denied the motions. Thereafter, defendants negotiated guilty pleas and received the sentences they bargained for: Bowen, a probationary term; Gadson, an eighteen-year custodial term with nine years of parole ineligibility. Defendants filed separate appeals, which we have consolidated for purposes of this opinion. Bowen argues:

> POINT I
>
> THE LOWER COURT ERRED IN DENYING DEFENDANT'S SECOND MOTION TO SUPPRESS FOR INSUFFICIENT MINIMIZATION OF UNAUTHORIZED INTERCEPTION OF CONVERSATIONS AND INFORMATION BECAUSE SUPPRESSION OF ALL INTERCEPTED COMMUNICATIONS WAS REQUIRED AFTER THE COURT FOUND A MINIMIZATION VIOLATION.

POINT II

THE LOWER COURT ERRED IN DENYING DEFENDANT'S FIRST MOTION TO SUPPRESS THE INTERCEPTED CALLS AS THERE ARE INSUFFICIENT FACTS IN THE RECORD TO SUPPORT THE JUDGE'S FINDINGS WHICH WERE MADE WITHOUT THE BENEFIT OF TESTIMONY AT AN EVIDENTIARY HEARING (PARTIALLY RAISED BELOW).

Gadson argues:

POINT I

THE LOWER COURT ERRED IN DENYING DEFENDANT'S SECOND MOTION TO SUPPRESS FOR INSUFFICIENT MINIMIZATION OF UNAUTHORIZED INTERCEPTION OF CONVERSATIONS AND INFORMATION BECAUSE SUPPRESSION OF ALL INTERCEPTED COMMUNICATIONS WAS REQUIRED AFTER THE COURT FOUND A MINIMIZATION VIOLATION.

POINT II

DEFENDANT'S CONVICTION FOR SECOND-DEGREE DISTRIBUTION OF A CONTROLLED DANGEROUS SUBSTANCE MUST BE REVERSED BECAUSE THE RECORD DOES NOT ESTABLISH AN ADEQUATE FACTUAL BASIS TO PROVE THE ELEMENTS OF THAT OFFENSE. THE LOWER COURT FAILED TO PERFORM ANY INQUIRY INTO DEFENDANT'S EQUIVOCAL ANSWERS TO QUESTIONS POSED DURING THE PLEA COLLOQUY AS TO THE NATURE AND AMOUNTS OF THE SUBSTANCE IN QUESTION AND THE POTENTIAL DEFENSES DEFENDANT SEEMED TO BE RAISING. (NOT RAISED BELOW).

POINT III

THE LOWER COURT ERRED IN DENYING DEFENDANT'S FIRST MOTION TO SUPPRESS THE INTERCEPTED CALLS AS THERE ARE INSUFFICIENT FACTS IN THE RECORD TO SUPPORT THE JUDGE'S FINDINGS WHICH WERE MADE WITHOUT THE BENEFIT OF TESTIMONY AT AN EVIDENTIARY HEARING. (PARTIALLY RAISED BELOW).

POINT IV

DEFENDANT'S EIGHTEEN-YEAR EXTENDED TERM SENTENCE WITH A NINE-YEAR PERIOD OF PAROLE INELIGIBILITY FOR A NON-VIOLENT DRUG-RELATED OFFENSE IS MANIFESTLY EXCESSIVE, AND THE JUDGE APPARENTLY ERRONEOUSLY BELIEVED THAT HE HAD TO SENTENCE DEFENDANT TO THE PERIOD OF INCARCERATION RECOMMENDED BY THE PROSECUTOR.

POINT V

THE TRIAL COURT FAILED TO AWARD THE CORRECT AMOUNT OF JAIL CREDIT REQUIRING A REMAND FOR CORRECTION OF THE JUDGMENT OF CONVICTION. DEFENDANT IS ENTITLED TO JAIL CREDIT FROM MARCH 9, 2012 TO APRIL 22, 2012 BECAUSE HE NEVER LEFT THE COUNTY JAIL BETWEEN HIS ARREST ON SEPTEMBER 8, 2009 AND SENTENCING ON OCTOBER 10, 2014. (NOT RAISED BELOW).

For the reasons that follow, we affirm the convictions and sentences but remand for correction of Gadson's judgment of conviction to reflect gap-time credits.

In May 2009, an Ocean County grand jury returned an eight-count indictment against multiple defendants. The grand jury charged Gadson with first-degree leader of a narcotics trafficking network, N.J.S.A. 2C:35-3 (count one); second-degree conspiracy to manufacture, distribute and/or possess with the intent to distribute a CDS, cocaine, N.J.S.A. 2C:35-5(a) and (b)(1), and 2C:5-2 (count two); second-degree distribution of a CDS, cocaine, N.J.S.A. 2C:35-5(a)(1) and (b)(2) (count three); third-degree distribution of CDS, heroin, N.J.S.A. 2C:35-5(a)(1) and (b)(3)

(count six); second-degree possession with intent to distribute a CDS, cocaine, N.J.S.A. 2C:35-5(a)(1) and (b)(2) (count four); third-degree possession with the intent to distribute a CDS, heroin, N.J.S.A. 2C:35-5(a)(1) and (b)(3) (count seven); and two counts of third-degree possession of a CDS, N.J.S.A. 2C:35-10(a)(1) (count five — cocaine and count eight — heroin). In the same indictment, the grand jury charged Bowen in count two with second-degree conspiracy to manufacture, distribute and/or possess with the intent to distribute a CDS, cocaine.

Following the indictment, defendants filed a motion to suppress intercepted communications transmitted over Gadson's and an alleged co-conspirator's cellular telephones. Law enforcement officers intercepted the communications after obtaining a wiretap order and communications data warrant. Defendants also filed a motion for a minimization hearing. The trial court granted in part and denied in part the suppression motions, suppressing some conversations on the ground the State had failed to minimize interception of privileged communications.

Thereafter, both defendants pleaded guilty. Bowen pleaded to an amended second count charging her with third-degree possession of a CDS with intent to distribute. The trial court sentenced her in accordance with the plea agreement to probation for eighteen months, conditioned on her serving nineteen days in

county jail, with credit for nineteen days of time served. The trial court also imposed appropriate fines and assessments.

Gadson pleaded guilty to the indictment's third count, second-degree distribution of a CDS, cocaine. In accordance with his plea agreement with the State, the court sentenced him to an extended eighteen-year custodial term with a nine-year period of parole ineligibility. The court also imposed appropriate fines and assessments.

Bowen raises two points on appeal. In her second point, she contends the trial court erred by initially denying her motion to suppress the intercepted cellular telephone communications without an evidentiary hearing. She asserts the record the court considered contained insufficient factual support for the court's findings. In her first point, Bowen argues the court improperly denied her second suppression motion. She contends that because the trial court found the State had not adequately minimized the intercepted conversations, it should have suppressed all intercepted conversations.

Gadson raises identical arguments in his brief's first and third points. He also alleges his plea contained an inadequate factual basis, challenges his eighteen-year custodial sentence as excessive, and claims he is entitled to additional jail credits.

In opposition, the State argues, among other things, that by pleading guilty without reserving the right to challenge the trial court's orders on the motions, Bowen and Gadson waived their right to appeal the orders. We agree.

"Generally, a guilty plea constitutes a waiver of all issues which were or could have been addressed by the trial judge before the guilty plea." State v. Robinson, 224 N.J. Super. 495, 498 (App. Div. 1988); see also State v. Marolda, 394 N.J. Super. 430, 435 (App. Div.), certif. denied, 192 N.J. 482 (2007). Thus, "a defendant who pleads guilty is prohibited from raising, on appeal, the contention that the State violated his constitutional rights prior to the plea." State v. Crawley, 149 N.J. 310, 316 (1997); see also State v. Knight, 183 N.J. 449, 470 (2005).

There are exceptions. Rule 3:5-7(d) authorizes a defendant to appeal an unlawful search and seizure of physical evidence after entering a guilty plea. In addition, Rule 3:9-3(f) authorizes a defendant, "[w]ith the approval of the court and the consent of the prosecuting attorney," to "enter a conditional plea of guilty reserving on the record the right to appeal from the adverse determination of any specified pretrial motion." It is "clear that the automatic as opposed to conditional reservation of the right to appeal following a guilty plea applies only to motions to suppress physical evidence allegedly seized in

violation of the Fourth Amendment and not to other evidential challenges, such as the admissibility of confessions."  Pressler & Verniero, Current N.J. Court Rules, comment 4 on Rule 3:5-7 (2017) (citing State v. Morales, 182 N.J. Super. 502, 508 (App. Div.), certif. denied, 89 N.J. 421 (1982)).

Neither exception applies here.  As both defendants state, "[i]n this case, defendant moved to suppress evidence under the Wiretap Act . . . ."  The defendants sought to suppress recorded statements, not physical evidence, and neither defendant entered a conditional plea pursuant to Rule 3:9-3(f).  To preserve the right to appeal an order denying a motion to suppress conversations recorded under the Wiretapping and Electronic Surveillance Control Act, N.J.S.A. 2A:156A-1 to -37, a defendant must do so under Rule 3:9-3(f).  State v. Keegan, 188 N.J. Super. 471, 475-76 (App. Div.), certif. denied, 93 N.J. 320 (1983).  Neither Bowen nor Gadson did so here.  For that reason, they have not preserved their right to raise the issue on appeal, and we decline to consider it.

Gadson contends his conviction for second-degree distribution of a CDS must be reversed because the record lacks an adequate factual basis.  He further contends the trial court failed to perform any inquiry into his equivocal answers to questions posed

during the plea colloquy regarding the nature and amounts of the substance in question and the potential defenses he raised.

During Gadson's plea colloquy, the following exchange occurred:

> DIRECT EXAMINATION BY [DEFENSE COUNSEL]:
>
> Q   Mr. Gadson, on or about March 9th of 2008 were you in possession of in excess of a half ounce of cocaine, just over a half ounce of cocaine?
>
> A   I believe so.  I believe it was cocaine.
>
> Q   And - -
>
> [THE ASSISTANT PROSECUTOR]:  I didn't hear his answer.
>
> THE COURT:  He said he believed it was cocaine.
>
> Q   You didn't have a lab facility but it was your understanding that it was cocaine, and cocaine was illegal?
>
> A   Yes.
>
> Q   And you did actually turn over that cocaine to a Robert Stevens, distribute it to Robert Stevens?
>
> A   Yes, I did.  Yes.
> Q   And you did that in Lakewood?
>
> A   Yes.
>
> [DEFENSE COUNSEL]:  That's all I have, Your Honor.
>
> CROSS-EXAMINATION   BY   [THE   ASSISTANT PROSECUTOR]:

A-1892-14T2

Q    Mr. Gadson, you had been through discovery with your attorney; haven't you?

A    Yes, I have.

Q    And you saw and heard the lab report from the Ocean County Sheriff's Department regarding the cocaine that you believe you had and distributed to Robert Stevens?

A    Yes.

Q    And so you have no reason to dispute the fact that that was cocaine and it was more than a half an ounce of cocaine; is that correct?

A    Now I know, yeah.

Q    Right.

A.    But before at first when he said it was coke, I didn't know that it was coke.  After I seen the reports, yes, now, but when Mr. Stevens came and got it from me - -

Q    I can't understand what you're saying.

A    - - when Mr. Stevens came and got it from me, I didn't know it was cocaine at that time.

[DEFENSE COUNSEL]:  May I ask a question, Your Honor?
THE COURT:  Yes, you.

[THE ASSISTANT PROSECUTOR]:  Just for the record - -

THE COURT:  Counsel would like to further question his client.  I'll allow him to do that.  You can revisit the issue.

REDIRECT EXAMINATION BY [DEFENSE COUNSEL]:

10

Q    You did not have any lab facilities; is that correct?

A    Exactly.  That's my point.  Right.

Q    And so the substance that you obtained you believe to be cocaine - -

A    Yes.

Q    - - the substance that you provided Mr. Stevens you believe to be cocaine?

A    Yes.

Q    And now you've reviewed the lab reports that it was indeed cocaine?

A    Yes.

Q    So it was your intent to possess and to distribute cocaine, and now you have proof that it was cocaine; is that correct?

A    Yes.  Yes.

[DEFENSE COUNSEL]:   I have nothing further, Your Honor.

[THE ASSISTANT PROSECUTOR]:  Thank you.

THE COURT:  Anything further?

[THE ASSISTANT PROSECUTOR]:   No, sir. Thank you.

A trial court "may refuse to accept a plea of guilty and shall not accept such plea without first . . . determining by inquiry of the defendant and others . . . that there is a factual basis for the plea[.]"  R. 3:9-2.  "[I]t is essential to elicit

from the defendant a comprehensive factual basis, addressing each element of a given offense in substantial detail." State v. Perez, 220 N.J. 423, 432 (2015) (quoting State v. Campfield, 213 N.J. 218, 236 (2013)).

Here, Gadson provided an adequate factual foundation. During his plea colloquy, Gadson admitted that when he sold the substance at issue, he believed it was cocaine and he intended to possess and distribute cocaine. He also admitted he reviewed the lab report, which confirmed the substance had indeed been cocaine. The plea colloquy, considered in its entirety, belies Gadson's contention that the trial court lacked adequate facts upon which to base his guilty plea.

Gadson contends his eighteen-year extended-term sentence with nine years of parole ineligibility is manifestly excessive and the trial court "erroneously believed . . . [it] had to sentence [Gadson] to the period of incarceration recommended by the prosecutor."

An appellate court may review a sentence imposed by a trial court to determine if the trial court (a) abided by legislative policies, (b) based its findings of aggravating and mitigating factors upon competent, credible evidence in the record, and (c) properly applied the sentencing guidelines to the facts of the case to reach a sentence that does not shock the judicial

12

conscience.  State v. Roth, 95 N.J. 334, 364-65 (1984).  An

appellate court must not substitute its judgment for that of the

trial court.  Id. at 365.

> In sum, then, appellate review of a sentencing
> decision calls for [an appellate court] to
> determine, first, whether the correct
> sentencing guidelines . . . have been
> followed; second, whether there is substantial
> evidence in the record to support the findings
> of fact upon which the sentencing court based
> the application of those guidelines; and
> third, whether in applying those guidelines
> to the relevant facts the trial court clearly
> erred by reaching a conclusion that could not
> have reasonably been made upon a weighing of
> the relevant factors.
>
> [Id. at 365-66.]

Here, the trial court carefully analyzed the aggravating and

mitigating factors upon which it based its decision to sentence

Gadson to an eighteen-year custodial term.  Further, Gadson

qualified for an extended term sentence, which was consistent with

his plea agreement.  Accordingly, Gadson's sentence is not

manifestly excessive; rather, his sentence is proper and does not

shock the judicial conscience.

The trial court made two comments during the sentencing

proceeding that Gadson construes as reflecting the court's belief

that it was bound by the State's sentencing recommendation; a

recommendation the State made in accordance with the plea

agreement.  After noting Gadson was extended-term eligible, and

following its review of Gadson's lengthy criminal record —
including eight CDS offenses, four of which were possession with
the intent to distribute — the trial court stated: "The [c]ourt
will note this is a negotiated plea. And why that's important,
. . . [t]he terms of it [are] negotiated between both [the] defense
and the [p]rosecutor. Mr. Gadson knows exactly what he'll be
sentenced to through that negotiated plea."

Later in its decision, after reviewing and weighing
aggravating and mitigating factors, and after considering six
letters from Gadson's family "indicating a different aspect of Mr.
Gadson," including how he sacrificed for his children, the court
stated: "Notwithstanding that, the [c]ourt has to go along with
this plea agreement in light of all the other things I've placed
on the record and sentence . . . Mr. Gadson to eighteen years . .
. ." (Emphasis added).

Having considered the court's statements in the context of
the entire sentencing proceeding, we disagree that they indicated
the court's misimpression it was bound by the State's sentencing
recommendation. Considered in context, the court was conveying
to Gadson that in light of his lengthy record and eligibility for
an extended term, the plea agreement provided him with some
certainty about the sentence he would receive; not that the
sentence was mandatory. This was made clear when the court

14                                        A-1892-14T2

explained it was following the plea recommendation "in light of all the other things I've placed on the record." We thus reject both Gadson's construction of the court's statements and his argument that he should be resentenced.

Lastly, Gadson contends the trial court awarded him an incorrect amount of jail time credits. Specifically, Gadson contends he is entitled to jail credits from March 9, 2012, through April 22, 2012, because "he never left the county jail between his arrest on September 8, 2009[,] and sentencing on October 10, 2014."

A defendant is entitled to "credits against all sentences 'for any time served in custody in jail . . . between arrest and the imposition of sentence' on each case." State v. Hernandez, 208 N.J. 24, 28 (2011) (quoting R. 3:21-8), mod. on other grounds, State v. C.H., 228 N.J. 111 (2017). A defendant may receive these credits as "jail credits under Rule 3:21-8 or [as] gap-time credits under N.J.S.A. 2C:44-5(b)(2) to reduce the time to be served on his sentence." Id. at 36.

> Jail credits are "day-for-day credits," [Buncie v. Dep't of Corr., 382 N.J. Super. 214, 217 (App. Div. 2005), certif. denied, 186 N.J. 606 (2006)], that are applied to the "front end" of a defendant's sentence, meaning that he or she is entitled to credit against the sentence for every day [he or she] was held in custody for that offense prior to sentencing.

[<u>Id.</u> at 37.]

Jail credits reduce a defendant's period of parole ineligibility as well as the sentence imposed. <u>Ibid.</u> (citing <u>State v. Mastapeter</u>, 290 <u>N.J. Super.</u> 56, 64 (App. Div.), <u>certif. denied</u>, 146 <u>N.J.</u> 569 (1996)).

In contrast, a sentencing court may award gap-time credits:

> [w]hen a defendant who has previously been sentenced to imprisonment is subsequently sentenced to another term for an offense committed prior to the former sentence, other than an offense committed while in custody:
>
>     . . . .
>
> (2) Whether the court determines that the terms shall run concurrently or consecutively, the defendant shall be credited with time served in imprisonment on the prior sentence in determining the permissible aggregate length of the term or terms remaining to be served[.]
>
> [<u>Ibid.</u> (second and third alterations in original) (citing <u>N.J.S.A.</u> 2C:44-5(b)).]

"The credit awarded under <u>N.J.S.A.</u> 2C:44-5(b) is referred to as 'gap-time credit' because it awards a defendant who is given two separate sentences on two different dates credit toward the second sentence for the time spent in custody since he or she began serving the first sentence." <u>Id.</u> at 38.

"To demonstrate an entitlement to gap-time credit, a defendant must establish three facts: '(1) the defendant has been

16

sentenced previously to a term of imprisonment[;] (2) the defendant is sentenced subsequently to another term[;] and (3) both offenses occurred prior to the imposition of the first sentence.'" Ibid. (alterations in original) (quoting State v. Franklin, 175 N.J. 456, 462 (2003)). Although "a defendant accrues and is entitled to jail credits for time spent in custody, . . . once the first sentence is imposed a defendant is only entitled to gap-time credits for time accrued thereafter when sentenced on the other charges." Id. at 47. A sentencing court must award gap-time credits to a defendant who meets these requirements. Id. at 38.

Gap-time credits apply towards the "back end" of a defendant's aggregate sentence. Ibid. (citation omitted). Gap-time credits do not reduce a defendant's parole ineligibility period or the length of a defendant's parole upon release. Id. at 39.

Here, police arrested Gadson on September 8, 2009, and he remained in county jail until the court sentenced him on October 10, 2014. The court awarded Gadson 1813 days of jail credit for his time served, but did not award Gadson credit for the period between March 9, 2012, and April 22, 2012, when he served time in county jail on unrelated municipal offenses. The failure to award Gadson forty-four days of gap-time credit for this period was error, as Gadson is entitled to the additional forty-four days of

17

gap-time credit. The State concedes this point. The judgment of conviction must be corrected accordingly.

For the foregoing reasons, we affirm Bowen's conviction and sentence and Gadson's conviction and sentence. We remand for correction of Gadson's judgment of conviction to reflect the appropriate gap-time credits.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION