899 A.2d 306 (2006)
386 N.J. Super. 84
STATE of New Jersey, Plaintiff-Respondent,
v.
Richard F. BEREZANSKY, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued January 19, 2006.
Decided June 7, 2006.
Stanley F. Rizzolo, Somerville, argued the cause for appellant (Rizzolo & Rizzolo, attorneys; Mr. Rizzolo, on the brief).
Daryl A. Williams, Assistant Prosecutor, argued the cause for respondent (Wayne J. Forrest, Somerset County Prosecutor, attorney; James L. McConnell, Assistant Prosecutor, of counsel and on the brief).
Before Judges WECKER, FUENTES and GRAVES.
The opinion of the court was delivered by
*307 WECKER, J.A.D.
This is defendant's appeal from a conviction for driving while intoxicated (DWI), as proscribed by N.J.S.A. 39:4-50. After being found guilty in the municipal court of Manville, defendant appealed to the Law Division, where a trial de novo again resulted in defendant's conviction. He was sentenced just as he was in municipal court to an eight-month loss of driving privileges. Motor vehicle offenses of careless driving, N.J.S.A. 39:4-97, and failure to wear a seatbelt, N.J.S.A. 39:3-76.3, were merged with defendant's DWI conviction. Defendant also was required to complete an alcohol counseling program and the Intoxicated Driver Resource Center Program.[1] All of defendant's penalties, with the exception of his continued alcohol counseling, have been stayed pending appeal. We now reverse.

I
Evidence adduced at trial supports these facts. At approximately 6:40 p.m. on December 3, 2003, Sergeant Jeffrey Petrone of the Manville Police Department was dispatched to the scene of a one-car motor vehicle accident on Dukes Parkway. Upon his arrival at the scene of the accident, Sergeant Petrone observed a white Pontiac Grand Am automobile resting against a utility pole. The windshield of the car was cracked, and defendant, Richard F. Berezansky, was inside the vehicle, bleeding from the head. Sergeant Petrone noticed that defendant was shaking, and the officer detected alcohol on his breath. Defendant informed Sergeant Petrone that he had had two beers and that he suffered from Parkinson's disease. Because he was concerned for defendant's health, Sergeant Petrone did not perform any psychophysical tests to determine whether defendant was intoxicated prior to his being transported to Somerset Medical Center.
Sergeant Petrone followed defendant to the hospital, where the officer requested a blood sample from defendant to determine his blood alcohol level. Sergeant Petrone supplied a signed blood alcohol request form; the laboratory technician and a nurse who was present when defendant's blood was drawn also signed the form. The technician then capped the vials of defendant's blood and handed them to Sergeant Petrone. He placed the vials in a cardboard box, which he sealed and returned to police headquarters. Upon his arrival at police headquarters, Sergeant Petrone placed the box inside a locked metal box in the evidence refrigerator. He then placed the key to the box in the evidence locker for the custodian of evidence.
Detective Michael Guilbert[2] is the custodian of evidence for the Manville Police Department. Detective Guilbert testified that he was the only person who had access to the sample while it was held in police headquarters. On the evening of December 3, Detective Guilbert entered information about the evidence into a computer and sent that information to the New Jersey State Police Laboratory. At approximately 2:00 p.m. on December 4, 2005, Detective Guilbert removed the samples from the cardboard box, placed the vials into a bag, heat-sealed the bag, and transported it to the New Jersey Police Laboratory in Trenton, commonly referred to as the Central Regional Laboratory. Detective Guilbert gave the samples to *308 Megan Williams, a clerk at the laboratory, who signed for the evidence.
Defendant's blood, however, was actually tested at the State Police South Regional Laboratory rather than the Central Regional Laboratory. Detective Guilbert could not explain how defendant's blood samples were transported from the Central Regional Laboratory to the South Regional Laboratory; indeed, Detective Guilbert stated that he had no idea where the South Regional Laboratory was located.
The laboratory certificate indicated that the sample of defendant's blood contained a blood alcohol level of 0.33%, more than three times the 0.10% threshold then set by statute. N.J.S.A. 39:4-50a(1)(ii).[3] Over defendant's objection, the trial judge found that the laboratory certificate was properly admitted into evidence under the business records exception to the hearsay rule. N.J.R.E. 803(c)(6).
In letters addressed to the municipal prosecutor for the Borough of Manville, dated December 19, 2003 and January 26, 2004, defendant gave notice that he questioned the chain of custody of his blood sample and expressed his intention to confront the custodian. In the December 19, 2003 letter, defendant demanded the preservation and production of the unused portion of his blood sample, stating that he sought the blood sample in order to obtain independent testing and analysis. See N.J.S.A. 39:4-50.2(c) and (d). Defendant reiterated those demands in a subsequent letter to the municipal prosecutor dated January 26, 2004. Detective Guilbert testified that he received the final evidence report from the State Police Laboratory, but he did not seek or obtain any vials of defendant's unused blood and was not requested to do so by the municipal prosecutor.
The State failed to produce any evidence in discovery or at trial to establish how or why defendant's blood samples were transported from the Central Regional Laboratory to the South Regional Laboratory. The laboratory certificate, which is dated December 24, 2003, states that the laboratory's policy is to destroy unused portions of a sample ninety days after the date of the final report. Defendant's multiple requests for the sample were transmitted to the municipal prosecutor well within the ninety-day period. The record does not provide any information about the maintenance or disposal of the remainder of the sample defendant sought to test.
The State also failed to comply with defendant's requests for documentation pertaining to the laboratory certificate or the tests performed. In his December 19 letter, defendant demanded the notes of the chemist who performed the analysis on defendant's blood and all graphs and printouts related to the analysis. Defendant's January 26, 2004 letter to the municipal prosecutor repeated that demand. The State failed to supply this documentation.
Defendant twice demanded a speedy trial, first in his December 19, 2003 letter to the municipal prosecutor and second in a March 10, 2004 letter addressed to the municipal court administrator. The municipal court trial began on May 6, 2004.

II
On appeal, defendant presents these arguments:
POINT I
DEFENDANT'S CONSTITUTIONAL RIGHT TO CONFRONT THE WITNESS AGAINST HIM WAS VIOLATED WHEN THE TRIAL COURT IMPROPERLY *309 ADMITTED THE STATE POLICE LABORATORY REPORT INTO EVIDENCE WITHOUT TESTIMONY FROM THE CHEMIST WHO PERFORMED THE ANALYSIS AND PREPARED THE REPORT.
POINT II
THE LABORATORY REPORT WAS IMPROPERLY ADMITTED INTO EVIDENCE BECAUSE THE STATE FAILED TO ESTABLISH THE CHAIN OF CUSTODY THAT BROUGHT THE BLOOD EVIDENCE TO THE STATE POLICE LABORATORY WHERE IT WAS ALLEGEDLY TESTED.
POINT III
DEFENDANT'S DUE PROCESS RIGHTS WERE VIOLATED BY THE STATE'S FAILURE TO PRESERVE AND MAKE AVAILABLE THE DEFENDANT'S BLOOD SAMPLE FOR INDEPENDENT BLOOD TESTING.
POINT IV
DEFENDANT'S CONVICTION MUST BE REVERSED AS A RESULT OF THE STATE'S DENIAL OF THE DEFENDANT'S RIGHT TO A SPEEDY TRIAL.
We have carefully considered the record in light of defendant's contentions on appeal, and we are convinced that defendant's right of confrontation was violated by the admission of the laboratory certificate without giving defendant an opportunity to confront its preparer. We therefore reverse defendant's conviction and remand for a new trial.

III
Defendant argues that the admission of the lab certificate without the testimony of its preparer violated his constitutional right of confrontation because he was denied the opportunity to cross-examine the chemist who analyzed the sample and prepared the certificate. The State claims that the lab certificate was properly admitted as a business record under N.J.R.E. 803(c)(6) and as a public record under N.J.R.E. 803(c)(8).
The Sixth Amendment to the Constitution of the United States and article I, paragraph 10 of the New Jersey Constitution each guarantee a criminal defendant "the right ... to be confronted with the witnesses against him." In Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court addressed the protections afforded by the Confrontation Clause.[4] The defendant in Crawford was charged with assault and attempted murder; defendant was convicted of assault. Id. at 38, 124 S.Ct. at 1357, 158 L.Ed.2d at 184. The trial judge admitted a tape-recorded statement of the defendant's wife, given to police while she was herself a suspect, after the judge found the statement reliable. Id. at 38-40, 124 S.Ct. at 1356-58, 158 L.Ed.2d at 184-86.
The Court held that "[a]dmitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation." Id. at 61, 124 S.Ct. at 1370, 158 L.Ed.2d at 199. "Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty." Id. at 62, 124 S.Ct. at 1371, 158 L.Ed.2d at 199. The Court reversed defendant's conviction. Id. at 68-69, 124 S.Ct. at 1374, 158 L.Ed.2d at 203. In Crawford, the Court's express holding applied only to "testimonial" evidence:

*310 Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law. . . as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination. We leave for another day any effort to spell out a comprehensive definition of "testimonial."
[541 U.S. at 68, 124 S.Ct. at 1374, 158 L.Ed.2d at 203 (footnote omitted)].
We need not fill in the definition left open by the Supreme Court to be guided by the Court's concerns for the right of confrontation as expressed in Crawford.
Neither the New Jersey Criminal Code nor the Rules of Evidence includes a specific provision for the admission of a lab certificate reporting the result of a blood test for alcohol content. There is, however, a Code provision for the admission of a certificate reporting the result of testing for a controlled dangerous substance. N.J.S.A. 2C:35-19. In State v. Simbara, 175 N.J. 37, 48, 811 A.2d 448 (2002), the Supreme Court addressed that statute, specifically, the defendant's right to require the preparer's testimony and availability for cross-examination as a precondition for admitting the certificate.
In Simbara, the State sought to admit a lab certificate as evidence "to demonstrate the nature and weight of an alleged controlled dangerous substance ... possessed by [the] defendant." Id. at 40, 811 A.2d 448. At a pre-trial hearing to determine the admissibility of the certificate, the defendant challenged the testing procedures and mechanisms utilized by the lab. Id. at 40-41, 811 A.2d 448. Without offering the testimony of the technician who performed the analysis or an employee familiar with the testing procedures, the State argued that the certificate was reliable because the laboratory complied with N.J.S.A. 2C:35-19.[5]Id. at 41, 811 A.2d 448. The *311 trial judge denied the admission of the laboratory certificate; we reversed and held the certificate admissible; the Supreme Court again reversed and held that the certificate was erroneously admitted. Id. at 42, 811 A.2d 448.
The Court noted the Attorney General's directive respecting the State's use of such laboratory certificates:
[W]hen and if the prosecutor decides in a particular case to file a formal notice of intent to use a laboratory certificate as trial evidence pursuant to N.J.S.A. 2C:35-19, the laboratory must compile and transmit to the prosecutor a copy of all reports or other documents prepared by or in the possession of the laboratory that pertain to the examination of the controlled dangerous substance in question. In these circumstances, the documents that must be transmitted to the prosecuting agency by the laboratory would include: a copy of the request for examination of evidence; all reports and notes prepared by the scientist; the underlying data used to reach conclusions concerning the composition and quantity of the substance submitted for examination, and any graphs, charts or computer printouts that describe the results of any manual or automated test of the substance submitted for examination.
If the prosecutor intends to proffer a sworn laboratory certificate at trial pursuant to N.J.S.A. 2C:35-19, the prosecutor must, pursuant to the literal requirements of the statute, convey to defense counsel a copy of the certificate along with all of the foregoing documents. In addition, in order to ensure that laboratory certificates are admissible as evidence at trial, forensic laboratories must make available for inspection by defense counsel all manuals, standard operating procedures or written protocols developed or relied upon by the laboratory concerning the forensic tests at issue or concerning the use, operation and maintenance of the equipment used to perform the analyses.
[Id. at 44, 811 A.2d 448 (quoting Memorandum from Peter C. Harvey, First Assistant Attorney General, to County Prosecutors at 1-2 (Aug. 22, 2002)).]
The Court found that the Attorney General's directive "reflect[ed] a reasonable interpretation of the statute's requirements." Ibid. The Court also held that even strict compliance with N.J.S.A. 2C:35-19 and the Attorney General's directive does not automatically establish the admissibility of a laboratory certificate. Id. at 46, 811 A.2d 448. Additionally, the Court held that a defendant who has received the required documentation nonetheless retains the right to challenge the reliability of the certificate, id. at 48, 811 A.2d 448, and "the State is obligated to produce the certificate's preparer whenever a defendant timely invokes his or her right to confront that witness. . . ." Id. at 40, 811 A.2d 448; see also State in the Interest of C.D., 354 N.J.Super. 457, 463, 808 A.2d 123 (App.Div.2002) (after a defendant objects to admission of a laboratory certificate in a drug case, the statute "vanishes as a determinative to admissibility in evidence of the laboratory certificate."). Thus, the defendant in Simbara was granted a new trial and given "the opportunity to renew his challenge to the certificate in view of the supplemental information furnished under the Attorney General's directive." Simbara, supra, 175 N.J. at 49, 811 A.2d 448.
Years before Crawford or Simbara, in an appeal from a conviction for drunk driving, we explained our concern about admitting a laboratory certificate attesting to the defendant's blood alcohol content, under an exception to the hearsay rule:

*312 [T]he evidence sought to be admitted was produced by a governmental agency whose business is the prosecution of crime.... Unlike [a] hospital laboratory... which exists primarily as an aid to diagnosis and treatment of patients, a police laboratory exists to test and produce evidence for governmental prosecuting agencies. The difference is a major one, which bears on the neutrality and thus the reliability of the laboratory analyses. We see no reason to interpret Evid.R. 63(13) and 63(15)(a) [predecessors to N.J.R.E. 803(c)(6) and (8), hearsay exceptions for business and governmental records] as an effort to abandon the adversarial trial process in favor of blind reliance on the skill and good intentions of prosecuting agencies.
[State v. Flynn, 202 N.J.Super. 215, 219-20, 494 A.2d 350 (App.Div.1985), remanded, 103 N.J. 446, 511 A.2d 634 (1986) (to be reconsidered in light of State v. Matulewicz, 101 N.J. 27, 499 A.2d 1363 (1985)[6], rev'd on remand sub nom. State v. Weller, 225 N.J.Super. 274, 276, 542 A.2d 55 (Law Div.1986)[7]].
We reject the State's reliance upon the business record or government record exceptions to the hearsay rule to permit the admission of this lab certificate. The rationale for those exceptions is that such a document is likely to be reliable because it was prepared and preserved in the ordinary course of the operation of a business or governmental entity, and not created primarily as evidence for trial. See N.J.R.E. 803(c)(6). See generally Biunno, Current N.J. Rules of Evidence, comment 1 to N.J.R.E. 803(c)(6); comment 2 to N.J.R.E. 803(c)(8) (2005). The certificate at issue is not a record prepared or maintained in the ordinary course of government business; it was prepared specifically in order to prove an element of the crime and offered in lieu of producing the qualified individual who actually performed the test.
Here, defendant not only was denied his constitutional right to confront the certificate's preparer, he was not even afforded an adequate opportunity to challenge the certificate's reliability, because the State failed to provide requested documentation regarding the laboratory analysis of the blood. See id. at 44-45, 811 A.2d 448. By analogy, N.J.S.A. 2C:35-19c requires the prosecutor to provide a defendant with all documentation relating to a proffered lab certificate as a condition for admission of that certificate attesting to the identification of a controlled dangerous substance. The purpose of that requirement is to "allow the opposing party a fair opportunity to make an informed decision whether to contest the admissibility of the certificate." State v. Miller, 170 N.J. 417, 430, 790 A.2d 144 (2002).
[W]hen the state offers the lab certificate, it essentially is proffering inadmissible hearsay evidence to prove an element of the criminal case against a defendant. In order to use that evidence and not run afoul of the Confrontation *313 Clause, the State must obtain defendant's consent, or failing that, must justify its admission at a hearing. Matulewicz, supra. N.J.S.A. 2C:35-19 does not and cannot affect the State's burden and certainly does not shift that burden to defendant. It merely serves to put the State on notice of those cases in which a defendant will not consent to the admission of the lab report and with respect to which the State must be prepared to produce an expert witness at trial or prove why one is not necessary. The obligation of defendant under the statute is to notify the State of his refusal to stipulate to the lab report and to assert that the lab results (composition, quality or quantity of the tested substance) will be contested at trial.
[Miller, supra, 170 N.J. at 432, 790 A.2d 144].
The State clearly failed here to meet the standards established in Simbara for admission of a drug test certificate. The Court has not had occasion to apply the same substantive standards to the admission of a blood alcohol test certificate offered to prove a DWI charge. We recognize that N.J.S.A. 2C:35-19, as well as Simbara and Miller, literally address only a drug test certificate. We fail, however, to see any reasonable basis for holding the State to a lesser standard, or according a defendant lesser rights, with respect to use of such a certificate as evidence of an essential element of the DWI offense. As we observed in State v. Flynn, "the neutrality and thus the reliability" of an analysis performed at a State laboratory cannot be presumed because "a police laboratory exists to test and produce evidence for governmental prosecuting agencies," and the business of the governmental agency seeking the admission of the evidence is "the prosecution of the crime." Flynn, supra, 202 N.J.Super. at 219-20, 494 A.2d 350.
The State's reliance on our decision in State v. Oliveri, 336 N.J.Super. 244, 764 A.2d 489 (App.Div.2001) (affirming drug conviction despite challenge to laboratory certificate), is not persuasive. Significantly, in affirming the Law Division decision convicting the defendant in Oliveri, we noted the municipal judge's alternative finding in that case: that irrespective of the lab certificate, there was sufficient observation evidence offered by the police to establish that defendant was driving while intoxicated. Id. at 251, 764 A.2d 489. We decided Oliveri prior to and thus without the benefit of the decisions in Simbara or Crawford. Nonetheless, to the extent that Oliveri may appear to conflict with either, we are bound by the decisions of both higher courts.
The State's argument herethat defendant's request to challenge the lab certificate was not sufficiently particularis entirely without merit. In Miller, supra, 170 N.J. at 425, 790 A.2d 144, the Court considered a similar argument by the State after it failed to provide documentation relevant to the challenged certificate. The Court observed that to adopt the State's argument would place the defendant in a "Catch-22." Id. at 434-35, 790 A.2d 144. "When a defendant attempts to surmount the barrier, he finds himself in the untenable position of having to identify `specific grounds' in order to confront the analyst, but being unable to confront the analyst in order to identify the `specific grounds.'" Id. at 435, 790 A.2d 144 (quoting Miller v. State, 266 Ga. 850, 472 S.E.2d 74, 79 (1996)). Here, defendant asserted his right to "contest at trial the composition, quality and quantity of substances submitted to the laboratory for analysis." The New Jersey Supreme Court in Miller held that "to avoid constitutional infirmity ... *314 N.J.S.A. 2C:35-19c [must be read] to require only that a defendant object to the lab certificate and assert that the composition, quality or quantity of the tested substance will be contested at trial." 170 N.J. at 436, 790 A.2d 144. Defendant's demand here was sufficiently particular to convey his intention to exercise his right of confrontation.

IV
Defendant argues that it was error to admit the lab certificate into evidence when the State failed to establish the chain of custody. Defendant specifically noted the lack of evidence that it was his blood sample that was identified, secured, and transferred from the Central Regional Laboratory to the South Regional Laboratory. The State's burden to demonstrate a proper chain of custody is of particular importance with respect to laboratory certificates. See Simbara, supra, 175 N.J. at 49, 811 A.2d 448. On remand, the State shall have the opportunity to offer evidence to supply the missing link in the chain of custody.

V
Defendant argues that his right to due process also was denied as a result of the State's failure to provide him with the remaining portion of his blood sample after the State laboratory had performed its analysis. The State responds that there is no evidence of bad faith in the destruction of the remaining blood, and therefore no due process violation.
In light of our determination that defendant's conviction must be reversed on other grounds, we need not decide whether the State's failure to provide defendant with a blood sample constituted a violation of due process that independently requires reversal. Because we expect this issue to arise again on remand, we offer these comments.
The State relies on State v. Casele, 198 N.J.Super. 462, 471, 487 A.2d 765 (App. Div.1985) (affirming a conviction for death by auto), to demonstrate that defendant's right to due process was not violated by the destruction of his blood sample. In Casele, we applied a three-prong test to determine whether the State's failure to preserve and supply defendant with his own blood sample constituted a due process violation. Id. at 469-70, 487 A.2d 765. The three factors were: "(1) whether the evidence was material to the issues of guilt or punishment; (2) whether defendant was prejudiced by its destruction; and (3) whether the government had acted in bad faith when it destroyed it." Id. at 470, 487 A.2d 765. Having considered those factors, we held: "[T]here being no evidence of bad faith on behalf of the prosecution nor any evidence that the samples would have been material to the defense or that defendant was prejudiced by the destruction of the blood samples, there was no error in admitting the test results into evidence." Id. at 471, 487 A.2d 765.[8]
In Casele, the defendant did not request the unused portion of the sample until six months after the original test, when testing apparently could have yielded less accurate results than the initial test. Id. at *315 470, 487 A.2d 765. We also noted that the "[d]efendant had every opportunity to question the test results without resort to the evidence itself both by cross-examination of the State's witnesses and through its own expert's testimony," and we found that the State appeared to have acted in good faith. Ibid. Moreover, the individual who performed the test testified at trial in Casele that the entire sample was used up in testing. Id. at 467, 487 A.2d 765. That witness was, obviously, subject to cross-examination.
Our decisions in State v. Mercer, 211 N.J.Super. 388, 393-94, 511 A.2d 1233 (App.Div.1986), and State v. Kaye, 176 N.J.Super. 484, 490, 423 A.2d 1002 (App. Div.1980), certif. denied, 87 N.J. 316, 434 A.2d 69 (1981), are informative. In each case, the defendant claimed a denial of due process because the State failed to provide a portion of the defendant's blood sample. In Mercer, we concluded that the defendant had an adequate opportunity to attack the State's test results by other means, and there was no suggestion that the State had acted in bad faith by destroying the remainder of the specimen. Id. at 394, 511 A.2d 1233. Similarly, in Kaye, we said:
We hold to the view that where an entire sample of a specimen, such as blood, is, as here, in good faith, consumed or destroyed during the testing process by a recognized law enforcement or other qualified laboratory, the consumption or destruction of the specimen does not constitute an act of suppression of evidence by the State sufficient to trigger a due process violation, warranting the suppression of the test results.
[Kaye, supra, 176 N.J.Super. at 490, 423 A.2d 1002.]
We also noted in Kaye that when the State took samples of the defendant's blood, he was apprised of his right to have another sample drawn and tested by a physician of his own choosing but he did not exercise that opportunity. Id. at 492, 423 A.2d 1002.
The issue was not fully argued in either court below, and thus was not addressed by the Law Division judge. On remand, either party may offer evidence relevant to the issue: whether the State's failure to preserve and supply defendant with the unused portion of his blood sample deprived him of due process.

VI
We reject defendant's contention that he was deprived of his constitutional right to a speedy trial based on the nearly five months that elapsed between his arrest and the beginning of his trial. Defendant notes that he demanded a speedy trial on two occasions, and he claims that prior to his conviction, he was subjected to embarrassment and apprehension.
We apply the four-pronged test of Barker v. Wingo, 407 U.S. 514, 530-33, 92 S.Ct. 2182, 2192-93, 33 L.Ed.2d 101, 115-19 (1972), to a speedy trial claim. See State v. Gaikwad, 349 N.J.Super. 62, 88, 793 A.2d 39 (2002). In Barker, the U.S. Supreme Court identified four factors to determine whether a defendant was deprived of the right to a speedy trial: "length of delay, the reason for the delay, the defendant's assertion of the right, and prejudice to the defendant." Barker, supra, 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117.
Defendant has not established a claim under Barker. Under the circumstances presented, we find insufficient merit in defendant's speedy trial claim to warrant further discussion in this opinion. See R. 2:11-3(e)(2).

*316 VII
Defendant's conviction is reversed and all charges are remanded to the Municipal Court of Manville. If the State seeks to rely upon the lab certificate in a new trial, the State must produce a witness to testify on personal knowledge of the testing and the preparation of the lab certificate. The State must also produce evidence of the chain of custody sufficient to allow the trier of fact to conclude that the sample tested was in fact defendant's uncontaminated blood. Finally, either party may address the issue of the State's failure to supply defendant with the unused portion of his blood sample.
Reversed and remanded for such further proceedings as are consistent with this opinion.
NOTES
[1] In addition, defendant was ordered to pay a $350 fine, a $200 DUI surcharge, a $50 VCCB assessment, a $75 safe and secure communities assessment, and $36 in court costs.
[2] Detective Guilbert's name is incorrectly spelled "Gilbert" in 1T.
[3] The statute has since been amended to provide that a blood alcohol level of 0.08 percent is a per se offense. L. 2004, c. 8, amending N.J.S.A. 39:4-50a(1)(i) and (ii).
[4] A DWI charge is a quasi-criminal offense entitling the defendant to the protection of the confrontation clauses. See State v. Widmaier, 157 N.J. 475, 494-96, 724 A.2d 241 (1999).
[5] N.J.S.A. 2C:35-19 provides, in pertinent part:

b. Upon the request of any law enforcement agency, the laboratory employee performing the analysis shall prepare a certificate. This employee shall sign the certificate under oath and shall include in the certificate an attestation as to the result of the analysis. The presentation of this certificate to a court by any party to a proceeding shall be evidence that all of the requirements and provisions of this section have been complied with. This certificate shall be sworn to before a notary public or other person empowered by law to take oaths and shall contain a statement establishing the following: the type of analysis performed; the result achieved; any conclusions reached based upon that result; that the subscriber is the person who performed the analysis and made the conclusions; the subscriber's training or experience to perform the analysis; and the nature and condition of the equipment used. When properly executed, the certificate shall, subject to subsection c. of this section and notwithstanding any other provision of law, be admissible evidence of the composition, quality, and quantity of the substance submitted to the laboratory for analysis, and the court shall take judicial notice of the signature of the person performing the analysis and of the fact that he is that person.
c. Whenever a party intends to proffer in a criminal or quasi-criminal proceeding, a certificate executed pursuant to this section, notice of an intent to proffer that certificate and all reports relating to the analysis in question, including a copy of the certificate and all reports relating to the analysis in question, including a copy of the certificate, shall be conveyed to the opposing party or parties at least 20 days before the proceeding begins.... Whenever a notice of objection is filed, admissibility of the certificate shall be determined not later than two days before the beginning of the trial.
[6] In Matulewicz, the Court required foundation evidence to support either the business record or public record exception. The Court also expressly preserved the defendant's right, in the event a hearing on remand determined that the lab certificate was admissible as an exception to the hearsay rule, to challenge its admissibility as a violation of his rights under the Confrontation Clause. Matulewicz, supra, 101 N.J. at 32-33 n. 2, 499 A.2d 1363.
[7] On remand "the report was not admitted into evidence due to the inability of the State to produce complete records of the standard tests performed on the gas chromatograph. The remaining evidence was insufficient to convict defendant and he was found not guilty." Weller, supra, 225 N.J.Super., at 276, 542 A.2d 55.
[8] Defendant also invokes Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215, 218 (1963), for the proposition that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." We do not perceive the State's failure to provide the blood sample here as a Brady violation, there is no evidence that the sample would have provided such exculpatory evidence.