975 A.2d 523 (2009)
408 N.J. Super. 484
STATE of New Jersey, Plaintiff-Respondent,
v.
Martin F. SMITH, Defendant-Appellant.
No. A-5217-07T4.
Superior Court of New Jersey, Appellate Division.
Argued April 1, 2009.
Decided July 30, 2009.
*524 Joyce E. Boyle, Morristown, argued the cause for appellant (McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys; Ms. Boyle, of counsel and on the briefs).
Erin Smith Wisloff, Assistant Prosecutor, argued the cause for respondent (Robert A. Bianchi, Morris County Prosecutor, attorney; Ms. Winsloff, on the brief).
Before Judges STERN, WAUGH and ASHRAFI.
The opinion of the court was delivered by
STERN, P.J.A.D.
Defendant appeals his conviction on trial de novo for violating N.J.S.A. 39:4-125. His principal contention is that he did not make a "U turn" and that the proofs do not warrant a finding that he did. However, the statute does not require proof that defendant actually made a 180-degree turn. We affirm the conviction because defendant was found guilty of turning his vehicle "around so as to proceed in the opposite direction on a highway" on which a "no U turn" sign was conspicuously postedconduct which N.J.S.A. 39:4-125 prohibits.
On his appeal, defendant raises additional contentions that we also address. In sum, he argues:
I. THE REVIEWING COURT SHOULD DETERMINE WHETHER THE LOWER COURT COULD HAVE REASONABLY REACHED ITS FINDINGS BASED ON SUFFICIENT CREDIBLE EVIDENCE PRESENT IN THE RECORD.
II. THE INTERESTS OF JUSTICE REQUIRE INTERVENTION AND CORRECTION OF THE LAW DIVISION'S FINDING.

*525 A. THE STATE DID NOT PROVE BEYOND A REASONABLE DOUBT THAT DEFENDANT-APPELLANT VIOLATED N.J.S.A. 39:4-125.
B. THE STATE FAILED TO PRODUCE SUFFICIENT EVIDENCE THAT THE SIGN AT ISSUE DOES NOT REQUIRE ENGINEERING JUSTIFICATION OR THAT THE SIGN AT ISSUE WAS PROPERLY PLACED.
C. DEFENDANT/APPELLANT'S MOTION TO DISMISS SHOULD HAVE BEEN GRANTED.
D. THE FAILURE TO APPOINT COUNSEL TO DEFENDANT/APPELLANT AT THE MUNICIPAL LEVEL SHOULD RESULT IN A DISMISSAL OF THE ACTION.

I.
When defendant appeared for the trial in the municipal court on August 29, 2006, the arresting officer was on vacation. Defendant objected to an adjournment, and the municipal judge stated "[i]f the officer's not here next time, it's automatically dismissed." The officer was not present when the case was called on the next scheduled date, October 3, 2006. The prosecutor explained that the officer had appeared earlier that day, but "he left at 2 o'clock because I didn't need him because I didn't think [defendant] was here." Defendant had not "checked in," or stood in line to note his appearance, "like he was supposed to." The judge offered to permit defendant to present his case "by affidavit, and that would not require [defendant] to come back." However, the judge denied defendant's motion to dismiss the complaint "[b]ecause the officer was here."
At the subsequent trial, Officer Matthew Ruggier of the Parsippany Police Department testified that on February 22, 2006, he observed the following:
I observed the vehicle traveling south on Littleton Road severalmaybe 100 to 200 yards prior to Park Road as a reference point makeattempt to make a left u-turn to travel north on Littleton Road. And I don't know exactly if he saw me and discontinued the u-turn and went into the driveway but ultimately turned left into the driveway of I believe it's 829 Littleton Road. And then I pulled in behind him, and he was backing up, and he saw me. And then I directed him backas he was backing up back into the driveway so we were out of the roadway, obtained his credentials, and subsequently issued him a summons for no u-turn.
The location is marked with a universal no u-turn sign along with double-yellow lines and the yellow hash marks in the roadway.
Ruggier acknowledged that, while he believed "the intentions of the vehicle operation was to change direction," defendant pulled into the driveway before planning to proceed "in the opposite direction and then proceed[] northbound." The roadway also had double yellow lines to prohibit a left turn at that location.
Sergeant Brian Valentine of the Mountain Lakes Police Department was "traveling to Morristown on a traffic detail" at the time. He testified as follows:
I was approximately two or three cars behind the vehicle. There was a traffic jam heading south. We were stuck for several minutes. The vehicle did a u-turn in front of me. I observed the vehicle make a u-turn, turn 180 degrees, then make a 90-degree right turn into a driveway.
*526 According to Valentine, he "observed the vehicle make a u-turn and then turn a right into the driveway."
Defendant testified on his own behalf:
I was operating my motor vehicle and stalled in traffic. I made a left turn using great care and caution into a driveway several houses south of 829. In fact, 829 is obstructed by the divider. And if you yourself drive by the site as to the alleged offense, you will see that it is not possible to make a direct left turn into the driveway at 829 unless you were to go over the divider. I did not make a u-turn.
. . . .
And I made a left turn into a driveway that was at least four houses south of the 829 address. I noticed the officer make a u-turn behind me. I stopped because I didn't know why he was. He remained stuck in the road for a moment, and I realized I would have to move my car. So I did. Shortly after that when now northbound was when he actually turned his lights on, not at that time. He did not have his lights activated on. And I decided that the best course of action for the officer's safety, for my safety would be to pull into the next available driveway. There was a large open driveway opposite the divider at 829, and that's the divider [sic] that I pulled into.
Q. So you pulled into two driveways.
A. Iyes, sir.
Q. Okay.
A. I turned completely around inside one driveway and proceeded westbound
Q. Okay.
A. to exit back northbound onto onto Route 202 to get back to 80, take my lumps on that.
On cross-examination defendant admitted that his turn involved "changing directions." However, defendant further testified he did not cross over the hatching between the yellow lines, but admitted to crossing a double yellow line.
Defendant also questioned the authority of Parsippany Township to post the "no u-turn sign." Defendant testified as follows:
The other thing is that after a diligent search, I could not find any supporting information that there is any engineering justification for that. My visibility was greater than 500 feet as is supported by the testimony educed [sic] at trial.
Defendant offered a letter from the Official Custodian of Records of the Department of Transportation, which stated their files "did not disclose an investigation report pertaining to the U turn prohibition on Route U.S. 202 southbound in the vicinity of Milepost 50.03...." The prosecutor objected to the proffer stating:
"Regulations turns on Route 202." I'll offer to the Court, that 202 in its entirety is not a state highway but sections, especially the section within Parsippany-Troy Hills, is a county road.
The objection was sustained.[1]
In rendering his opinion, the municipal judge concluded:
The charge is no u-turn. I find as a matter of fact that what the defendant did is that he was heading northbound and attempted to get out of traffic and go southbound. He did that by way of affecting a left-hand turn into a private driveway, backed out, and then his intent *527 was to go north. So basically, he was going south and wanted to go north.
The area in which he made that left turn, however, from the north side to the south side is outlined on the street by yellow lines. There are two yellow lines in both the northbound side and the southbound side so as to affectas to create a triangle with double-yellow lines on each side of that triangle until it reaches a point where they join together. The center of the triangle is filled out by yellow cross-hatched lines. It is this area that the defendant commenced his turn and drove over the cross-hatched area.
I have no doubt that his intent was ultimately [to] go in the opposite direction. I have no doubt that he has violated the intent of the statute by affecting this turn and in any event has made an illegal turn in that he has crossed the yellow-hatched area.
The judge assessed defendant a fine of $65 and $30 in court costs.
While counsel was assigned on the trial de novo, the judge in the Law Division rejected defendant's argument that counsel should have been assigned in municipal court and the municipal conviction had to be vacated in the absence of same. On the trial de novo, the judge in the Law Division rejected defendant's argument that counsel should have been assigned in municipal court, and the municipal conviction had to be vacated in the absence of same. The judge disagreed with the need to assign counsel to defendant as an indigent, because "the defendant did not face any consequences of magnitude," including the loss of driving privileges. As he stated:
This was not a case in which the there was a mandatory jail sentence or any type of jail sentence. This is simplywas a case of found guilty aa motor vehicle find [sic] and court costs involved. There was no indications made by the defendant or anyone else there in the Court hearing that this defendant was likely to lose his driving privileges.
So I do not find that the circumstances presented themselves that there would be a case of magnitude of consequence to this defendant, and accordingly I do not find the defendant would be entitled to a public appointed attorney. Certainly the defendant if wish [sic] to hire his own attorney he could have done so. But he indicated he was not able to do that, and I do find that the Court was proper in moving forward without counsel for this defendant.
In the Law Division defendant argued "that the State had the burden of proving the sign was properly placed, that there was an engineering justification, and that there was DOT approval." The State sought to supplement the record and argued that "the prosecutor below made an erroneous statement in that it was a county road," that because it was a State road, no documentation for placement of the "no u-turn" sign was required, and that there was a "common law presumption that public service officers in the discharge of their duties have followed all the proper formalities, and this applies also to traffic control devices including red lights and signs." As to this issue the judge stated:
With regard to the issue of theof the direction of the sign, and whose burden it is, I find thethe defendant's burden to come forward with information that the sign was improperly put up, or it was put up on a roadway in which there was no jurisdiction by one entity or the other. In this case it's a state highway. And it is not the burden of the state.
There is a presumption that these signs are put up properly, and that *528 proper measures are made before they're put up. And I find it would be the defendant's burden to bring forth proof that the sign was improperly erected. In this case no such proof was provided.
As to the merits the judge found defendant guilty of violating N.J.S.A. 39:4-125, stating:
With regards to the issue of the U-turn, we had in this case two seasoned police officers. One from Parsippany. The other one, I believe, from Mountain Lakes, who each independently testified as to the operation of the vehicle by the defendant. It was the indication that as I read the review of the transcript that they saw himthey may have been lost, because he certainly wasn't from the area. But making a U-turn where there was a sign clearly present indicating no U-turn permitted.
And it was each of the officer's assessment that hewhen he saw the officers he quickly pulled off to a driveway to appear that he was going into that location. The officers did remark that thereafter he didn't stay in that location. He drove off after getting his summons.
I'm satisfied reviewing the statements made by the officerofficers, plural, that there was sufficient evidence presented to the municipal court to find the defendant guilty of the improper U-turn.[2]

II.
We first address defendant's argument that he should have been assigned counsel in municipal court. The judge on trial de novo was absolutely correct that counsel should not have been assigned in the municipal court, even if the defendant was indigent. Because no sentence embodying imprisonment or "a consequence of magnitude" was contemplated, or actually imposed, by the municipal court, there was no basis to make an assignment. See R. 7:3-2(b) (noting the "Guidelines for Determining a Consequence of Magnitude," appended to Part VII of the Rules); N.J.S.A. 2B:24-7(a); Rodriguez v. Rosenblatt, 58 N.J. 281, 277 A.2d 216 (1971); State v. Hermanns, 278 N.J.Super. 19, 650 A.2d 360 (App.Div.1994).
The problem is that another judge of the Law Division had previously assigned counsel when counsel was not warranted on the municipal appeal. For that reason, we also assigned counsel. See R. 2:7-1; R. 2:7-2(b); R. 2:7-2(d); R. 2:7-4. The assignment of counsel in the Law Division and in this court obviously did not adversely affect defendant.[3] Nor does the assignment require reversal of the conviction flowing from proceedings properly conducted without counsel in the municipal court.

III.
We find the proofs support a finding that defendant violated N.J.S.A. 39:4-125. N.J.S.A. 39:4-125 provides:
The driver of a vehicle shall not turn such vehicle around so as to proceed in the opposite direction upon any curve or upon the approach to or near the crest of a grade or at any place upon a highway as defined in R.S. 39:1-1 where the view of such vehicle is obstructed within a distance of five hundred feet along the highway in either direction; and no such vehicle shall be turned around so as to proceed in the opposite direction on a *529 highway which shall be conspicuously marked with signs stating "no U turn."[[4]]
Because the statute prohibits the turning around of a vehicle to proceed in the opposite direction, as opposed to a 180-degree turn, an endeavor to proceed in the opposite direction where a "no U turn" sign is conspicuously posted is all that is required. The proofs before the Law Division, including defendant's own testimony, were sufficient to sustain the finding of a statutory violation. Regardless of whether or not turning into a driveway before proceeding in the opposite direction can be regarded as part of a "U" turn or 180-degree turn, there is no dispute that defendant started to proceed in the opposite direction on Littleton Road before turning into the driveway in which he was stopped. We review the findings on the trial de novo in the Law Division, and they were sufficient to sustain the conviction. See R. 1:7-4(a); State v. Locurto, 157 N.J. 463, 724 A.2d 234 (1999).

IV.
Defendant argues that the State did not prove the County of Morris or Township of Parsippany complied with N.J.S.A. 39:4-8(b) in the absence of proof that the Commissioner of Transportation investigated the need for a "no U turn" sign and approved its placement on Littleton Road. However, the State submitted supplemental proof on the trial de novo which reflects that the relevant portion of Littleton Road (Route U.S. 202) "is under State jurisdiction." See N.J.S.A. 27:7-1 (defining a "state highway" to mean "a road taken over and maintained by the State"). According to the certification of Christopher Vitz, Supervising Engineer of the Morris County Department of Public Works, Division of Engineering:
2. The map labeled as Exhibit A is entitled "Route 80, Section 3-G Jurisdictional Limit Map Sta. 140+00 to Sta. 240+00, Township of ParsippanyTroy Hills, Morris County" dated October 1967 and last revised May of 1971. It was prepared by the New Jersey Department of Transportation.
The map shows, in different shades and hatch patterns, the different jurisdictional agencies that control portions of the roadway. State jurisdiction is shown in a shaded tone. County jurisdiction is shown with a one directional hatch pattern. Municipal jurisdiction is shown with an `x' type hatch pattern.
The map shows a County jurisdiction of Littleton Road ending 300' north of the centerline of Crestview Drive. The roadway is under State jurisdiction between that point and a point approximately 300' south of Spartan Drive. The property located at #829 Littleton Road begins approximately 450' north of Crestview Drive, which is within the limits of State jurisdiction.

*530 3. The hard copy of the map is located within the County of Morris Department of Public Works jurisdictional control files. Also included in the file is a resolution dated September 7, 1972 by and between the Morris County Board of Chosen Freeholders and the State of New Jersey approving the jurisdictional changes.
Because the statute prohibits a turn "so as to proceed in the opposite direction on a highway," and the proofs before the municipal court included evidence that defendant endeavored to turn and proceed in the opposite direction, the misrepresentation about the governmental entity which maintains or controls the road poses no double jeopardy or similar concern on a trial de novo following a conviction in municipal court. See, e.g., Justices of Boston Mun. Court v. Lydon, 466 U.S. 294, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984).
Defendant does not challenge introduction of the certification as a violation of the confrontation clause or hearsay doctrine. Defendant does claim it was prejudicial to him and objects to its submission "the day before the trial de novo," particularly because the municipal prosecutor took the position the wrongdoing occurred on a county road and the attached map "lacks proper authentication and does not delineate the area in question."
We bypass these concerns, however, because this court has stated almost thirty-five years ago that "[o]nce the State has proved ... that a traffic control device does exist in a specific location, it is to be presumed official and properly placed there. The burden of going forward and adducing evidence to rebut the presumption then falls upon defendant." State v. Cooper, 129 N.J.Super. 229, 234, 322 A.2d 836 (App.Div.), certif. denied, 66 N.J. 329, 331 A.2d 28 (1974). Defendant did not present any evidence to rebut the presumption of proper placement or an evidentiary response to the State's claim that the road was a "state highway" because it was maintained by the State, and the judge in the Law Division could therefore properly determine that the State met its burden of proof beyond a reasonable doubt without having to present any evidence of authorization for the sign. See N.J.S.A. 39:4-8.[5]See also N.J.S.A. 39:4-183.3.
In sum, because the "no U turn" sign need not be on a "state" highway, the State need not prove that the highway was maintained by the State. To the extent that compliance with N.J.S.A. 39:4-8 is necessary to establish in some other prosecution that a "no U turn sign" was properly posted on a county or municipal road, we read Cooper to permit a rebuttable presumption that the statute was satisfied. See Cooper, supra, 129 N.J.Super. at 234, 322 A.2d 836. The statute is violated whenever there is a turn so as to proceed in the opposite direction when a "no U turn sign" is conspicuously posted irrespective *531 of the governmental entity that maintains the road.

V.
Finally, we find no abuse in discretion because the complaint was not dismissed when the case was adjourned by the municipal judge on October 3, 2006. The judge could rely on the prosecutor's representation that Officer Ruggier had appeared and was excused because defendant had not appeared and presented himself. See R. 7:8-5 (addressing dismissals); see also State v. Berezansky, 386 N.J.Super. 84, 99-100, 899 A.2d 306 (App.Div.2006) (addressing speedy trial claims), appeal dismissed, 196 N.J. 82, 951 A.2d 1036 (2008).
Affirmed.
NOTES
[1] Defendant also produced a friend who testified about the sign, the divider, and the yellow lines.
[2] We read this to be a finding of guilt, as opposed to substantial evidence review, and defendant does not contend otherwise.
[3] We appreciate the efforts of assigned counsel on behalf of defendant.
[4] Unfortunately, the New Jersey Statutes Annotated improperly includes the word "state" before "highway" in the last clause of the statute, with reference to the "no U turn" sign. We have traced the statute to its amendment by L. 1987, c. 81, § 1, and the word "state" does not appear therein, as it had in L. 1934, c. 122, § 1. The statute was amended in 1987 to make clear its application "to all highways," not just those "maintained by the State." As the Senate statement to the 1987 bill provides, "[t]his clarification is accomplished by deleting the word `state' before the word `highway' in the last sentence of R.S. 39:4-125." The absence of the word "state" is significant because the need for the turn on a "state highway," as opposed to a "highway," is not an element of the offense. Therefore, the absence of proof in municipal court that the road was a "state highway" does not present a question of double jeopardy, if the double jeopardy protection otherwise applies in this two-tier setting, or of fundamental fairness.
[5] In State v. Taimanglo, 403 N.J.Super. 112, 957 A.2d 699 (App.Div.2008), certif. denied, 197 N.J. 477, 963 A.2d 845 (2009), we recently explained that the Rules embodied in Part III of the Rules of Governing the Courts of the State of New Jersey applied to municipal appeals on trial de novo except where a specified provision of Rule 3:23 or Rule 3:24 provides otherwise. The trial de novo is to be conducted on the record except in extraordinary circumstances permitting a plenary trial de novo or remand for new trial. The record may also be supplemented for specific reasons noted in Rule 3:23-8(a). The State may not introduce evidence to supplement the record except to rebut defendant's supplementation or when the record "is partially unintelligible or defective." R. 3:23-8(a). The Rule did not permit the supplementation. However, here the judge could rely on the presumption in the absence of proof to the contrary and the lack of need to prove it was a "state highway."