**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0164-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LUIS A. FIGUEROA,
a/k/a LUIS FIGUEROA,
LUIS ANGEL FIGUEROA,
ANGEL A. FIGUEROA,
and ANGEL FIGUEROA,

    Defendant-Appellant.

_____

Argued October 9, 2024 – Decided October 21, 2024

Before Judges Gooden Brown and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 14-08-1256.

Ashley T. Brooks, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer Nicole Sellitti, Public Defender, attorney; Ashley T. Brooks, of counsel and on the brief).

William P. Miller, Assistant Prosecutor, argued the cause for respondent (Mark Musella, Bergen County

Prosecutor, attorney; William P. Miller, of counsel and on the brief; Catherine A. Foddai, Legal Assistant, on the brief).

PER CURIAM

After losing his pre-trial motion to dismiss the indictment, defendant Luis Figueroa entered a negotiated guilty plea to second-degree eluding and was sentenced to time served. We now consider the June 10, 2019 order denying defendant's motion to dismiss the indictment for lack of a speedy trial. Because the trial court conducted a thorough and factually supported analysis of the Barker[1] factors, we affirm.

## I.

On June 6, 2014, an alarm was broadcast by the Port Authority of New York and New Jersey Police Department about a minivan driven by defendant, on suspicion of carjacking and a possible armed kidnapping. Police in Fort Lee then attempted to pull over the car defendant was driving because it matched the description of the radio broadcast.

Defendant did not pull over and continued to drive at a high speed through Fort Lee, over the George Washington Bridge, and into New York City. Defendant then travelled onto eastbound 179th Street and into oncoming traffic.

---

[1] Barker v. Wingo, 407 U.S. 514 (1972).

He collided with the front of a police car before hitting a wall. Defendant jumped out of the car and ran away but was tackled and handcuffed. He had deep lacerations to both arms and burns on his chest and back area. EMS arrived and transported defendant to the hospital. Subsequently, defendant was arraigned in Manhattan, held without bail, and taken to a New York City jail.

In addition to State charges in New Jersey and New York, a federal detainer was lodged against defendant. On August 19, 2014, defendant's custody was transferred from New York City to the federal government. The federal government then detained him in the Essex County Correctional Facility. Defendant was indicted federally for kidnapping, possession of a firearm by a convicted felon, assault of an employee of the United States, and malicious damage and destruction of property.[2] Crimes that were alleged to have been committed in the jurisdictions of Bergen County and Manhattan were left to be prosecuted by the local authorities.

A week after the federal government took custody of defendant, a Bergen County Grand Jury returned an indictment charging defendant with second-degree eluding, N.J.S.A. 2C:29-2b and second-degree aggravated assault,

---

[2] In May 2022, defendant was convicted in a federal jury trial of kidnapping, criminal sexual contact, and other charges that resulted in an April 2023 sentence to forty-seven years in prison.

N.J.S.A. 2C:29-2. On September 18, 2014, the Bergen County Sheriff's Department filed a warrant for his arrest. For an unknown reason, the warrant was refiled on July 30, 2015.

In 2018, after reviewing a record that revealed the Bergen arrest warrant, defendant became aware of the indictment. As a result, in March 2018, he sent a letter to the Bergen County Justice Center requesting disposition of the warrant. Defendant was then arraigned in Bergen County approximately a month later. At the request of defendant, a yearlong delay ensued because he wanted to resolve his federal charges before his State charges. During this requested delay, defendant asserted his speedy trial rights on two occasions.

In April 2019, defendant filed a pro se speedy trial motion. In May 2019, defendant's counsel filed a motion to dismiss the indictment on the basis that defendant's speedy trial rights had been violated. The trial court heard argument and issued a decision denying his motion to dismiss on June 10, 2019.

In considering the speedy trial motion, the court applied the four-prong Barker test. First, the court found that the four-year delay was sufficient to trigger the analysis of the remaining Barker factors. Second, the court found that the four-year delay was not attributable to the State because there was no evidence that the State knew defendant was being housed in the Essex County

4

Correctional Center on the federal charges and available for prosecution. Third, the court said it did not hold it against defendant that he did not assert his speedy trial rights earlier given that defendant had claimed he was unaware of the indictment until the spring of 2018. Fourth, the court found that defendant had been "minimally prejudiced" because the case was not a complicated one and even if surveillance videos and the vehicle involved in the offense were no longer available, "that kind of evidence is really not necessary" based on the facts of the present case. Upon balancing the factors, the court denied defendant's speedy trial motion.

On the same day, defendant pleaded guilty to second-degree eluding. He preserved the right to appeal the denial of his speedy trial motion. In exchange for the plea, the State agreed to recommend a six-year flat sentence, concurrent to any federal sentence, and to dismiss the remaining charge and motor vehicle violations. The trial court agreed to impose either a time served or a suspended sentence. Defendant was not sentenced until four years later in August 2023, because of defendant's wish to be sentenced in person after the resolution of his federal case which was complicated by COVID-19. He was eventually sentenced to time served. This appeal followed with defendant arguing that:

A-0164-23

POINT I

THE TRIAL COURT'S ORDER DENYING [DEFENDANT'S] SPEEDY TRIAL MOTION SHOULD BE REVERSED BECAUSE THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN APPLYING EACH OF THE BARKER FACTORS.

II.

On appeal, we defer to the trial court's factual findings underpinning its legal conclusions. State v. McNeil-Thomas, 238 N.J. 256, 271 (2019). Our review of the court's legal conclusions is de novo. State v. Dorff, 468 N.J. Super. 633, 644 (App. Div. 2021). A trial judge's determination that a defendant's right to a speedy trial was violated will only be reversed if that determination is clearly erroneous. State v. Tsetsekas, 411 N.J. Super. 1, 10 (App. Div. 2009).

The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and imposed on the states through the Due Process Clause of the Fourteenth Amendment. Klopfer v. North Carolina, 386 U.S. 213, 222-23 (1967). "The constitutional right . . . attaches upon defendant's arrest." State v. Fulford, 349 N.J. Super. 183, 190 (App. Div. 2002) (citing State v. Szima, 70 N.J. 196, 199-200 (1976)). As a matter of fundamental fairness, excessive delay in completing a prosecution may qualify as a violation of a defendant's constitutional right to a speedy trial. State v. Farrell, 320 N.J. Super.

6

425, 445-46 (App. Div. 1999) (citing State v. Gallegan, 117 N.J. 345, 354-55 (1989)). After all, "'[a] defendant has no duty to bring himself to trial; the State has that duty . . . .'" State v. Merlino, 153 N.J. Super. 12, 17 (App. Div. 1977) (quoting Barker, 407 U.S. at 527).

In Barker, the United States Supreme Court announced a four-part test to determine when a delay infringes upon a defendant's due process rights. Barker, 407 U.S. at 530. Courts must consider and balance the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Ibid. Our Supreme Court adopted the Barker test in Szima, 70 N.J. at 200-01. See also State v. Cahill, 213 N.J. 253, 258 (2013) (concluding that the four-factor balancing test of Barker remains the governing standard to evaluate claims of denial of a speedy trial).

No single factor is a "necessary or sufficient condition to the finding of a deprivation of the right [to] a speedy trial." Barker, 407 U.S. at 533. Rather, the factors are interrelated, and each must be considered in light of the relevant circumstances of each particular case. Ibid. In an analysis of a speedy trial challenge, a trial court must weigh the "societal right to have the accused tried and punished" and a defendant's right "to be prosecuted fairly and not

7

oppressively." State v. Dunns, 266 N.J. Super. 349, 380 (App. Div. 1993) (quoting State v. Farmer, 48 N.J. 145, 175 (1966)).

The burden lies on defendant to show that the Barker factors, on balance, weigh in favor of dismissal. See State v. Berezansky, 386 N.J. Super. 84, 99 (App. Div. 2006). However, because the analysis requires balancing, "when the delay in concluding a trial is excessively long by any measure . . . , the burden upon defendant to satisfy the other factors is correspondingly diminished." Farrell, 320 N.J. Super. at 453. While we acknowledge "in the administration of justice, dismissal must be a recourse of last resort," Id. at 447 (quoting State v. Prickett, 240 N.J. Super. 139, 147 (App. Div. 1990)), so too must we consider a defendant's right to be prosecuted "fairly and not oppressively." Dunns, 266 N.J. Super. at 380 (quoting Farmer, 48 N.J. at 175).

We now consider the trial court's application of these principles. Defendant argues that a proper analysis and balancing of the four Barker factors establish a violation of his right to a speedy trial. The State asserts that the trial judge carefully considered and properly applied each Barker factor in denying defendants' motion.

Regarding the first factor, the length of delay, there is no specific amount of time after which "a criminal charge would be subject to dismissal." Cahill

213 N.J. at 264 (citing Barker, 407 U.S. at 523). Whether the delay is presumptively prejudicial depends on the nature of the charges and the customary time required to dispose of the charges. Cahill, 213 N.J. at 264-65 (citing Barker, 407 U.S. at 530). The court must consider "the amount of time customarily required to dispose of similar charges, and the defendant has the obligation to establish that customary period." Id. at 265 (citing Doggett v. United States, 505 U.S. 647, 651-52 (1992)).

The length of the delay is a double inquiry. "[T]o trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay," Doggett, 505 U.S. at 651-52, since an accused cannot allege a constitutional violation if the State has, in fact, prosecuted his case with "customary promptness." Id. at 652. If the defendant makes that initial showing, then the court must consider, "as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." Ibid.; Hakeem v. Beyer, 990 F.2d 750, 759-60 (3d Cir. 1993), aff'd after remand, 27 F.3d 557 (3d Cir. 1994).

Here, the trial court correctly found that the delay of four years in prosecuting defendant justified a speedy trial analysis. The trial court

appropriately concluded the delay was not five years, as the State was ready to have the trial a year-and-a-half earlier, but defendant expressed he wanted his federal case resolved first.  In determining this factor, the court accurately noted that a month after defendant was taken into federal custody, the State presented the matter to a grand jury and filed a bench warrant detainer, that was then refiled.

In addressing the second Barker factor-the reason for the delay-and who is more to blame for that delay, the court correctly found that the State was not at fault and if anyone was to blame, it was defendant who was aware of his charges in Bergen County.

To analyze the reasons for delay, courts should "divid[e] the time into discrete periods of delay," and determine whether each delay was attributable to "the State, defendant, or the court system."  State v. May, 362 N.J. Super. 572, 596 (App. Div. 2003).  Even where the State or court system is at fault, different levels of culpability should weigh differently in the balance.  See Barker, 407 U.S. at 531.  Here, the facts establish three periods of delay to apportion responsibility between the State and defendant: (1) defendant's status from the time while in federal custody until he was initially brough to court, which was approximately four years; (2) defendant's time in New Jersey after he wrote his

first letter in March 2018; and (3) defendant's delay after he was brought to court in 2018. The State lodged a warrant within a month of his indictment, so they were not at fault.

Additionally, under this factor, "the government is required to identify the reason for the delay." Cahill, 213 N.J. at 266 (citing Barker, 407 U.S. at 531). Moreover, "if the government deliberately delayed the trial to hamper the defense, this factor will weigh heavily in the defendant's favor," but a "more neutral reason…such as negligence…will also be weighed against the government, albeit less heavily than deliberate." Ibid. Here, the trial court found this factor to weigh in favor of the State, opining that the delay was not attributable to the government because they did not sit on their rights to prosecute defendant. Additionally, the judge noted that nothing in the record indicated the State knew where defendant was being held or that he was available to be brought to Bergen County.

Nevertheless, the court was not clearly erroneous in determining this factor weighed in favor of the State, as defendant was clearly aware of the charges. Second, when defendant wrote his letter to the county and the court, he appeared in court within a month. Lastly, once he was brought to court, defendant delayed the matter for almost two years, because he was trying to

resolve his federal case first, so as to not get penalized for having another conviction. This delay is squarely on defendant.

The third <u>Barker</u> factor, whether defendant asserted his right to a speedy trial, was weighed in favor of the State, but given minimal weight by the judge. As to whether defendant asserted his speedy trial right, the court noted that defendant claimed he did not know about the indictment until he was arraigned. However, while not assigning it great weight, the trial court noted that after defendant was arrested on the Bergen County charge, but before his arraignment, he did not assert his speedy trial right. <u>Barker</u>, 407 U.S. at 532. Moreover, as already stated, when defendant was brought to Bergen County, his attorney asked that the matter be adjourned so that defendant could resolve the federal matter.

Finally, the trial court considered whether defendant was prejudiced by the delay. The mere possibility of prejudice is not sufficient to support the position that speedy trial rights have been violated. The defendant must establish actual prejudice. <u>United States v. Loud Hawk</u>, 474 U.S. 302, 315 (1986). Prejudice is assessed in light of the interests which a speedy trial right was designed to prevent, including oppressive pretrial incarceration, the minimization of anxiety and concern to the accused and limiting the possibility

12 <span>A-0164-23</span>

that the defense would be impaired by diminishing memories and loss of exculpatory evidence. Barker 407 U.S. at 532. Of these forms of prejudice, impairment of the defense is the most serious. Doggett, 505 U.S. at 654.

As the trial court properly found, the delay in defendant's trial did not prejudice him. He was already being detained because of the serious federal charges he was facing, which included kidnapping and possession of a firearm. The State case against defendant was relatively simple and the delay would not affect his ability to defend his case, notwithstanding his contention that he was harmed by the destruction of potential videos and the unavailability of witnesses. Moreover, defendant was responsible for a substantial portion of that delay. As the trial court noted, the court file was "replete with correspondence from counsel for the defense asking the court to adjourn on several occasions, [s]tatus conferences, pretrial conferences and any matters involving this matter."

In looking at the totality of the circumstances, we are satisfied the trial court properly balanced the Barker factors in denying defendant's motion to dismiss the charges. Although the four-year delay was enough to trigger the remaining Barker factors, "[n]one of the Barker factors is determinative, and the absence of one or some of the factors is not conclusive of the ultimate determination of whether the right has been violated." Cahill, 213 N.J. at 267.

13

To the extent that we have not addressed any of defendant's remaining arguments, we have determined they are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0164-23